75 A.3d 453

Brian BOWLING, Appellee

v.

OFFICE OF OPEN RECORDS, Appellant,

Pennsylvania Emergency Management Agency, Intervenor.

No. 20 MAP 2011.

Supreme Court of Pennsylvania.

Argued Sept. 13, 2011.

Decided Aug. 20, 2013.

136

Emily J. Leader, Esq., PA School Boards Association, Inc., for PA School Board Association, Amicus Curiae.

Andrew H. Cline, Esq., PA Department of Transportation, Patrick Anthony Kane III, Esq., Jose E. Morales, Esq., Tammi Brooke Snyder, Esq., PA Emergency Management Agency, for Pennsylvania Emergency Management Agency.

Denna Lefkowitz, Esq., Terry Lee Mutchler, Esq., Pennsylvania Office of Open Records, J. Chadwick Schnee, Esq., for Office of Open Records.

David Alan Strassburger, Esq., Strassburger, McKenna, Gutnick & Gefsky, for Brian Bowling.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice McCAFFERY.

We granted allowance of appeal in this case under the Right–to–Know Law ("RTKL"), Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104, to determine the standard and scope of review that apply when a court reviews a final determination of the Office of Open Records (the "OOR" or "Appellant").

### Background of "Right–to–Know" Legislation in Pennsylvania

The RTKL, which became effective on January 1, 2009, is the statute providing for access to public records in Pennsylvania. It was preceded by the Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.9, which was known as the Right–to–Know Act ("RTKA"). In 2002, the RTKA was substantially overhauled by the Act of June 29, 2002, P.L. 663 (repealed). The revised RTKA remained in effect through 2008.

Before the RTKA was amended in 2002, a requester seeking access to a government record in Pennsylvania bore the burden of demonstrating that the record was a "public record" and that the requester was entitled to see it. *Tribune–Review Publishing Co. v. Westmoreland County Housing Authority,* 574 Pa. 661, 833 A.2d 112, 115 (2003); *Rowland v. Public School Employees' Retirement System,* 885 A.2d 621, 627 (Pa.Cmwlth.2005). The responding agency was under no time limit within which it had to respond to a request for access. If

the agency in possession of the record denied access, the recourse for a requester wishing to challenge such denial was to take an appeal to court. *Wiley v. Woods*, 393 Pa. 341, 141 A.2d 844, 849 n. 9 (1958). Appellate review was specified by statute to encompass a determination of whether the agency's denial was for "just and proper cause under the terms of" the RTKA. *LaValle v. Office of General Counsel*, 564 Pa. 482, 769 A.2d 449, 458 n. 13 (2001), citing 65 P.S. § 66.4 (repealed); *Dynamic Student Services v. State System of Higher Education*, 548 Pa. 347, 697 A.2d 239, 242 (1997). If the court determined that the agency's denial was without "just and proper cause," it could "enter such order for disclosure as it may [have] deem[ed] proper." 65 P.S. § 66.4 (repealed).

As indicated above, in 2002, the General Assembly amended the RTKA, revamping the procedures to be followed for obtaining access to public records. A streamlined, expeditious set of procedures for accessing public records was created, but the burden still rested upon the requester to establish that requested records were public records that he or she was entitled to inspect. *LaValle, supra* at 458. However, agencies were required to respond to a request in 5 days (for Commonwealth agencies) or 10 days (for non-Commonwealth agencies), with an additional 30 days available in some circumstances. 65 P.S. § 66.3–3(a) (repealed). A requester could file exceptions with the agency head within 15 days, could expect a final decision 30 days later, and then had 30 days to file an appeal in court. 65 P.S. §§ 66.3–5, 66.4 (repealed). Prior to determination, the agency head or his or her designee was authorized to conduct a hearing. 65 P.S. § 66.3–5(b) (repealed).

Significantly, as part of this revamping, the amended RTKA deleted the requirement that a reviewing court determine whether denials of access to requested records were for "just and proper cause." For appeals to the Commonwealth Court from Commonwealth agency decisions, no standard or focus of review was articulated. *See* 65 P.S. § 66.4(a) (repealed). However, for appeals from decisions of non-Commonwealth agencies, "a requester [was] entitled to a reasoned decision

containing findings of fact and conclusions of law based on the evidence as a whole which clearly and concisely state[d] and explain[ed] the rationale for the decisions so that all [could] determine why and how a particular result was reached." 65 P.S. § 66.4(b) (repealed). In either case, the agency had the opportunity to respond "in accordance with applicable court rules," and "[t]he record before a court [was to consist of] the request, the agency's response, the requester's exceptions, if applicable, the hearing transcript, if any, and the agency's final determination, if applicable." 65 P.S. § 66.4(c) and (d) (repealed).

Because the RTKA, as amended, jettisoned the "just and proper cause" standard but failed to articulate any standard of review of Commonwealth agency decisions, the Commonwealth Court determined that it should address petitions for review from RTKA decisions of such agencies pursuant to Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, which sets forth the "traditional," or so-called "deferential," approach to disposing of appeals from Commonwealth agencies. *Parsons v. Urban Redevelopment Authority of Pittsburgh*, 893 A.2d 164, 167 n. 2 (Pa.Cmwlth.2006); *Hartman v. Department of Conservation and Natural Resources*, 892 A.2d 897, 899 n. 3 (Pa.Cmwlth.2006); *Martella v. Department of Transportation*, 841 A.2d 633, 635 n. 9 (Pa.Cmwlth. 2004).[1] Section 704 provides:

The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been

1. *See also Nernberg v. City of Dubois*, 950 A.2d 1066, 1067 n. 5 (Pa.Cmwlth.2008); *Digital–Ink, Inc. v. Department of General Services*, 923 A.2d 1262, 1264 n. 5 (Pa.Cmwlth.2007); *Berman v. Pa. Convention Center. Authority*, 901 A.2d 1085, 1087 n. 1 (Pa.Cmwlth.2006); *Schenck v. Township of Center*, 893 A.2d 849, 852 n. 6 (Pa.Cmwlth.2006); *Rowland v. Commonwealth*, 885 A.2d 621, 626 n. 5 (Pa.Cmwlth.2005); *Heffran v. Department of Corrections*, 878 A.2d 985, 988 n. 5 (Pa. Cmwlth.2005).

violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

2 Pa.C.S. § 704.[2]

The Commonwealth Court arrived at this determination despite the fact that the RTKA, as amended, explicitly stated: "The provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to this act." 65 P.S. § 66.9 (repealed). The Commonwealth Court "reasoned that [this] exclusion only applied to those chapters of the Administrative Agency Law relating to practice and procedure, *i.e.*, Chapter 5, and not the remaining chapters, in particular, Chapter 7 (relating to judicial review). Thus, [the Commonwealth Court's] standard of review ... is whether constitutional rights have been violated, whether an error of law has been committed or whether findings of fact are supported by substantial evidence." *Hartman, supra* at 899 n. 3.

In 2008, the General Assembly enacted the RTKL, which replaced the RTKA and provided for significantly broadened access to public records. Under the new law, agency records are presumed to be public records, accessible for inspection and copying by anyone requesting them, and must be made available to a requester unless they fall within specific, enumerated exceptions or are privileged. 65 P.S. §§ 67.305(a), 67.701(a), 67.708(b) (listing categories of records that are exempt from public access). To justify a determination to deny a requester access to a requested record, the relevant government agency bears the "burden of proving ... by a preponderance of the evidence" that an exception applies. 65 P.S. § 67.708(a).

The RTKL identifies four types of public agencies: Commonwealth agencies, local agencies, legislative agencies, and

2. An analogous provision, which applies to appeals from local agency determinations to the courts of common pleas, is set forth at 2 Pa.C.S. § 754(b).

judicial agencies. *See* 65 P.S. §§ 67.301–304. The RTKL then provides that each agency, of whatever type, must appoint an "open-records officer" who issues the agency's interim and final determinations on requests for access to public records of that agency, providing a written description of the requested record(s) and written specific reasons if a requester is denied access. 65 P.S. §§ 67.502, 903(2).

Of central significance to the instant case, the RTKL also established a new Commonwealth agency, the Office of Open Records, within the Department of Community and Economic Development. Among its many functions, the OOR provides information relating to the implementation and enforcement of the RTKL, issues advisory opinions to agencies and requesters, provides training courses to agencies and public officials, and provides informal mediation programs to resolve disputes under the RTKL. 65 P.S. § 67.1310(a)(1), (2), (3), (4), and (6). In addition, with respect to most Commonwealth agencies and local agencies, where requesters challenge denials of access, the OOR assigns appeals officers to review the challenges. 65 P.S. §§ 67.503(a) and 67.1310(a)(5). However, judicial agencies, legislative agencies, the Attorney General, State Treasurer, and Auditor General (all Commonwealth agencies); and the district attorneys of each county (all local agencies), shall designate their own appeals officers to hear appeals from the respective agency's determinations. 65 P.S. § 67.503(a)-(d). Thus, appeals from final determinations of these latter agencies are not heard by the OOR.

When an agency has denied access to requested records, the requester may file an appeal with the OOR, or with an appeals officer directly if the agency is one that appoints its own appeals officers, wherein the requester "shall state the grounds upon which the requester asserts that the record is a public record . . . and shall address any grounds stated by the agency for delaying or denying the request." 65 P.S. § 67.1101(a)(1). The appeals officer may hold a hearing, but is not required to do so, and the appeals officer's decision whether or not to hold a hearing is **not appealable.** 65 P.S. §§ 67.1101(b)(3), 1102(a)(2). The appeals officer **may** admit

testimony, evidence, and documents that he or she believes to be reasonably probative and relevant to an issue in dispute. 65 P.S. § 67.1102(a)(2). The appeals officer must issue a final determination on the matter within 30 days, and provide a written explanation of the reason for the decision. 65 P.S. § 67.1101(b)(1). However, if the appeals officer fails to issue a final determination within 30 days, the appeal is **deemed denied.** 65 P.S. § 67.1101(b)(2). The appeals officer's determination is a final order. 65 P.S. § 67.1101(b)(3). No further administrative appeal is provided for in the RTKL. Additionally, the RTKL requires that OOR appeals officers be attorneys who receive special training in order to serve in such capacity. 65 P.S. § 67.1310(a)(5).

Decisions of OOR appeals officers are reviewable upon petitions for review—to the Commonwealth Court when the matter arises from a determination made by a Commonwealth agency, or to the court of common pleas when the matter arises from a determination made by a local agency (the Commonwealth Court and the courts of common pleas will often hereinafter be collectively referred to as the "Chapter 13 courts," in reference to the chapter of the RTKL in which their relevant duties are discussed).[3] 65 P.S. §§ 67.1301–1302. In another departure from the RTKA, the RTKL requires **both** the Commonwealth Court and the courts of common pleas to render decisions that "**contain findings of fact and conclusions of law based upon the evidence as a whole.** [Such] decision[s] shall clearly and concisely explain the rationale for the decision." 65 P.S. §§ 67.1301(a); 67.1302(a) (emphasis added). When review is sought in court, the RTKL specifies that "[t]he record before a court shall consist of the request, the agency's response, the appeal filed under section 1101, the hearing transcript, if any, and the final written determination of the appeals officer." 65 P.S. § 67.1303(b).

**3.** The Commonwealth Court also hears appeals from decisions made by appeals officers of Commonwealth agencies whose initial decisions are not reviewable by the OOR, and the courts of common pleas also hear appeals from decisions made by the appeals officers of the respective district attorneys' offices. 65 P.S. §§ 67.1301–1302.

Additionally, the RTKL provides that the Chapter 13 courts may award attorneys' fees to or impose sanctions upon requesters or civil penalties upon agencies after the court has made relevant **factual findings** supporting such awards, sanctions, or penalties. 65 P.S. §§ 67.1304–1305.

Similarly to the RTKA, the RTKL provides: "[t]he provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to this act unless specifically adopted by regulation or policy." 65 P.S. § 67.1309. Further, the RTKL authorizes government agencies, including the OOR, to promulgate regulations and adopt appeal procedures in order to implement the provisions of the RTKL. 65 P.S. §§ 67.504(a) and 67.1102(b).

## Factual and Procedural Background

In the instant case, Appellee, an employee of the Pittsburgh Tribune–Review, requested access to records from the Pennsylvania Emergency Management Agency ("PEMA"). Specifically, Appellee sought access to records of invoices and contracts relating to equipment and services that PEMA had purchased using grant funds from the federal Department of Homeland Security. PEMA provided access to the records, but first redacted the identities of the recipients of the goods and services purchased. It redacted this information based upon the exemptions set forth in 65 P.S. § 67.708(b)(2) (for "record[s] maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that if disclosed would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity . . . ."), and (b)(3)(ii) (for "record[s], the disclosure of which creates a reasonable likelihood of endangering the safety or the physical security of a building, public utility, resource, infrastructure, facility or information storage system"). PEMA determined that disclosure of the identities was critical information that revealed gaps, vulnerabilities and emergency response capabilities in the Commonwealth, and that disclosure would be reasonably

likely to jeopardize or threaten public safety or preparedness or public protection activities.

Appellee appealed, and an OOR appeals officer, without holding a hearing, but after requesting and receiving memoranda of law from Appellee and PEMA, issued a final written determination that redaction of the information was proper. Appellee petitioned for review in the Commonwealth Court, before which PEMA appeared as an intervenor.

The Commonwealth Court reversed and remanded in an *en banc* published opinion. *Bowling v. Office of Open Records*, 990 A.2d 813 (Pa.Cmwlth.2010).[4] Before it addressed whether redaction of the information was proper, the Commonwealth Court addressed the appropriate standard of review it was to apply. PEMA had argued for the so-called "deferential" standard for reviewing determinations of administrative agencies: *i.e.*, whether substantial evidence in the record supported the findings of fact, whether errors of law were committed, or whether constitutional rights were violated. Appellee had argued that a *de novo* standard of review applied. The Commonwealth Court ultimately concluded that the applicable standard was the *de novo* standard, requiring that, within the court's appellate jurisdiction, it must independently review the OOR's orders and could substitute its own findings of fact for those of the agency. *Id.* at 818.[5]

The court first noted that Section 1301(a) of the RTKL requires decisions of the reviewing court to contain findings of fact and conclusions of law based on the evidence as a whole.

4. The *en banc* panel consisted of five judges rather than the usual seven.

5. In a later case, *Prison Legal News v. Office of Open Records*, 992 A.2d 942, 947 (Pa.Cmwlth.2010), the Commonwealth Court described its opinion in *Bowling* as having held that 65 P.S. § 67.1301(a) provides for "independent review of the evidence, not *de novo* review." The court provided no explanation for the supposed distinction, however, and the foregoing statement was made in the context of discussing the scope of the record on appeal. We view the Commonwealth Court as having held in *Bowling* that a *de novo* standard of review applies to appeals from the OOR under the RTKL. The United States Supreme Court has equated the terms *de novo* and independent. *See Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 425, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001).

*Id.,* citing 65 P.S. § 67.1301(a). It interpreted this language as imposing on the court an express duty of fact-finding that is "consistent with a standard similar to *de novo* review." *Id.* The court further noted the language of Section 1309, which provides: "[t]he provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to this act unless specifically adopted by regulation or policy." *Id.* The court interpreted this language to constitute an express direction of the General Assembly that the framework for reviewing agency decisions set forth in 2 Pa.C.S. § 704, and advanced by PEMA, does not apply to disputes under the RTKL.[6] The court did not address those decisions made under the RTKA coming to a different conclusion.

Next, taking guidance from the federal Freedom of Information Act, 5 U.S.C. § 552, and from procedures that apply when the Commonwealth Court, in its appellate jurisdiction, conducts fact-finding in reviewing decisions of the Board of Finance and Review, the court determined that it was not limited to reviewing the record below but could itself conduct fact-finding. *Bowling, supra* at 819–20.[7] The court concluded, "while reviewing this appeal in our appellate jurisdiction, we function as a trial court, and we subject this matter to independent review. We are not limited to the rationale offered in the OOR's written decision. Accordingly, we will enter narrative findings and conclusions based on the evidence as a whole, and we will explain our rationale." *Id.* at 820.

6. Again, Section 704 requires a reviewing court to affirm the agency adjudication "unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." 2 Pa.C.S. § 704.

7. The court also noted several statutes under which a reviewing court on a statutory appeal from an agency decision is permitted to take additional evidence and render findings of fact. *Bowling, supra* at 820 n. 10 (discussing statutes and cases concerning drivers' license suspension appeals, zoning appeals, appeals in workers' compensation disfigurement cases, tax assessment appeals, and liquor licensing appeals).

The court next addressed the permissible scope of its review. This required the court to interpret Section 1303(b) of the RTKL, which provides that "[t]he record before a court shall consist of the request, the agency's response, the appeal filed under section 1101, the hearing transcript, if any, and the final written determination of the appeals officer." 65 P.S. § 67.1303(b). The court stated that this language does not expressly restrain a court from reviewing other material, such as a stipulation of the parties, or from conducting an *in camera* review of documents at issue, and does not prohibit the court from supplementing the record through hearing or remand. *Bowling, supra* at 820. The court determined that it was necessary to engage in statutory construction because "[i]t is unclear whether the General Assembly intended the [RTKL] to limit a reviewing court's scope of review or merely to describe the items which must be certified to a court for review." *Id.*

Noting that similar language had already been in effect under the RTKA since 2002, the court determined that several cases from the Commonwealth Court and from this Court suggested that a reviewing court could admit evidence or conduct an *in camera* review of documents;[8] hence, the Commonwealth Court concluded, appellate courts are not confined strictly to the record as described in Section 1303(b) and could consider information beyond the record below. *Id.* at 822. The court noted that this Court, in *Appeal of Borough of Churchill*, 525 Pa. 80, 575 A.2d 550 (1990), held that a court reviewing a decision on a statutory appeal possesses the inherent right to employ rules for procedure and practice before it so long as the rules do not conflict with or violate the laws of the Commonwealth or the United States. *Bowling, supra* at 822. Accordingly, the Commonwealth Court concluded that the current law does not expressly restrain a court from reviewing other material or prohibit a court's supplemen-

8. *Bowling, supra* at 821, citing, *inter alia, Nernberg, supra; Tribune-Review Publishing Co. v. Bodack*, 599 Pa. 256, 961 A.2d 110 (2008) (Saylor, J., concurring); *LaValle v. Office of General Counsel*, 564 Pa. 482, 769 A.2d 449 (2001); *York Newspapers, Inc. v. City of York*, 826 A.2d 41 (Pa.Cmwlth.2003).

tation of the record through hearing or remand, and that, in the absence of a specific statutory restriction, a court deciding a statutory appeal has the inherent authority to take reasonable measures to ensure that a record sufficient for judicial review exists. *Id.* The court concluded its analysis of the scope of review thusly:

> In light of the discussion above, we conclude that Section 1303 of the [RTKL] was not intended to restrict a reviewing court's scope of review. Rather, similar to this Court's review of F[inance] & R[eview] Board decisions, a court is entitled to the broadest scope of review. The language in Section 1303 of the [RTKL] was intended to describe the record to be certified by the OOR to a reviewing court. However, the overall statutory scheme of the [RTKL] clearly indicates the General Assembly's intent that issues regarding access to public records be resolved expeditiously and efficiently. . . .
>
> * * *
>
> Given this overall scheme, a court reviewing an appeal from the OOR under the [RTKL] should consider the manner of proceeding most consistent with justice, fairness and expeditious resolution. For example, should a hearing be necessary for proper review, a court may consider that a hearing before an OOR appeals officer is not attended with the same formality as in court. *See* Section 1102(a)(2) of the [RTKL], 65 P.S. § 67.1102(a)(2) (appeals officer may admit into evidence information believed to be reasonably probative and relevant; appeals officer may limit cumulative evidence). Also, a court should consider that at times requesters will be unrepresented and therefore at a disadvantage in certain court proceedings.

*Bowling, supra* at 822–23 (citations and footnote omitted).

The Commonwealth Court then proceeded to address the merits of Appellee's appeal, examining the record compiled below. Although the court did not appear to take any testimony, it is unclear whether it admitted additional documentary evidence. The court ultimately determined that PEMA's re-

dactions from the requested information were "far too reaching" because PEMA failed to "consider that the location of all goods and services is not vital to public safety." *Id.* at 826. In coming to this conclusion, the court observed, after reviewing the "reproduced record," that some PEMA-procured items, such as "bungee cords" were "innocuous" and thus, the disclosure of the location of such items would not be "vital to local, state, or national public safety, preparedness, or public protection activity." *Id.* at 825. The court then drew a distinction between these "innocuous" items and those such as computer servers and biochemical testing equipment, the disclosure of the location of which would reasonably likely pose a potential danger or threat. *Id.* The court held:

> In other words, PEMA's sweeping redaction of the recipients' names is overbroad. Whether knowledge of the location of a particular item (with its supporting goods and services) is reasonably likely to pose a threat to or endanger public safety cannot be made using a blanket approach. PEMA's method of withholding the recipients' names runs counter to the purposes of the [RTKL]. Therefore, PEMA must make a reasonable effort to differentiate between goods and services which are reasonably likely to endanger public safety and those that do not. In the latter instance, PEMA must provide Requester [Appellee] with the names of the recipients of the goods and services purchased with Homeland Security funds.

*Id.*

Accordingly, the Commonwealth Court reversed and remanded the matter to the OOR for further remand to PEMA to refine its redactions of the disclosed material. We granted OOR's allowance of appeal and accepted two questions for review:

> a. Whether Final Determinations rendered by the OOR are entitled to a deferential standard of review, for which the scope of the court's review is limited to the record of the OOR?
>
> b. Whether the level of judicial review imposed by the Commonwealth Court, which shall be applied in future

appeals of OOR Final Determinations, was proper when the standard and scope of review do not effectuate the statutory process set forth in the RTKL, do not comport with accepted principles of statutory construction of the current RTKL or the process followed under the RTKL's predecessor, and the level of review does not account for the creation of a new Commonwealth agency as an independent fact-finder? *Bowling v. Office of Open Records*, 609 Pa. 265, 15 A.3d 427 (2011) (*per curiam*).[9]

## Argument of Appellant, the OOR

The OOR asserts that it is a "quasi-judicial administrative tribunal entitled to deference."[10] Appellant's Brief at 7. The deference that the OOR contends is due appears to encompass several concepts. Most prominently, the OOR argues that when a Chapter 13 court reviews a determination of one of its appeals officers, the "traditional" or so-called "deferential" standard of review must apply, namely, whether the appeals officer committed an error of law or a constitutional violation or whether the critical findings of fact are supported by substantial evidence. Thus, the OOR argues that the essential components of Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, applied by the Commonwealth Court to appeals from Commonwealth agency determinations under the old RTKA, should continue to apply to appeals under the RTKL. Appellant's Brief at 8, 13–17. Indeed, the OOR asserts that in the present case, the Commonwealth Court ignored "six-decades of judicial precedent" when it concluded that it could conduct a *de novo* review of an appeals officer's determination. *Id.* at 7.

Fundamentally, this aspect of the OOR's argument is based on the fact that the RTKL contains language similar to that found in the RTKA, which the Commonwealth Court had

9. PEMA appears before us as an intervenor. The issue of redaction as a matter of substantive law is not at issue in the current appeal.

10. In fashioning its argument before this Court, the OOR appears to lump together the agency as a whole and its distinct cadre of appeals officers, who represent only one aspect of the agency's functions.

interpreted as allowing for application of Section 704 of the Administrative Agency Law. Again, that language states in the RTKL: "[t]he provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to this act unless specifically adopted by regulation or policy." 65 P.S. § 67.1309. The Commonwealth Court had held under the RTKA that a similar statutory prohibition referred only to Chapter 5 of Title 2, not Chapter 7 of Title 2, which contains Section 704. *See Hartman, supra* at 899 n. 3, and related cases cited herein, slip op. at 456 and *id.* n. 1. The OOR avers that this Court had ample opportunity to reverse the Commonwealth Court on the standard of review applied by that court in numerous decisions made under the RTKA, but we never did so. Moreover, the OOR contends that the General Assembly was aware of this case law history when it reinstituted the statutory prohibition against the application of Title 2 to the procedures established under the RTKL. For this reason, the OOR asserts that the General Assembly signaled its "intent to continue providing deference to adjudications rendered by the [OOR]." Appellant's Reply Brief at 1; *see also* Appellant's Brief at 15.

Relatedly, the OOR contends that the Commonwealth Court erred by failing to explain why Pa.R.A.P. 1551(a) did not inform and control its analysis. Rule 1551(a) provides, in relevant part: "Review of quasijudicial orders shall be conducted by the court on the record made before the government unit." Pa.R.A.P. 1551(a). The OOR asserts that Rule 1551(a) requires a Chapter 13 court to defer to the record compiled before the appeals officer, and, further, that if the Chapter 13 court, and not the appeals officer, serves as factfinder in RTKL appeals, then the OOR's decision-making capacity shall be rendered "superfluous" or "redundant." *See* Appellant's Brief at 10.

In a parallel or subsidiary argument, the OOR cites to case law holding that judicial discretion may not be substituted for administrative discretion and that agency decisions may not be overturned by reviewing courts unless the agency manifestly or flagrantly abused its discretion. *See* Appellant's Brief at 9–

10 (quoting and citing *Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 109 A.2d 331, 334–35 (1954), and *Slawek v. State Board of Medical Education & Licensure*, 526 Pa. 316, 586 A.2d 362, 365 (1991)). In a similar vein, the OOR cites case law holding that agencies are afforded broad deference in interpreting their enabling statutes, that an agency's interpretation of its enabling statute will not be reversed unless clearly erroneous, and that a reviewing court may not substitute its judgment for that of the agency. *See* Appellant's Brief at 22–24 (quoting and citing *St. Elizabeth's Child Care Ctr. v. Department of Public Welfare*, 600 Pa. 131, 963 A.2d 1274, 1277–78 (2009), and *Department of Education v. Empowerment Board of Control of the Chester–Upland School District*, 595 Pa. 426, 938 A.2d 1000, 1010 (2007)).

With respect to the argument that a reviewing court may not substitute its judgment for that of the agency, the OOR appears to be arguing that the Commonwealth Court erred by substituting the court's "judgment" regarding the proper interpretation of the standard of review under the RTKL for the "judgment" of the OOR's contrary interpretation. *See* Appellant's Brief at 24. Otherwise, the OOR fails to explain how principles of agency discretion and the broad deference to be accorded such discretion dovetail with the OOR's basic argument that the "deferential" standard of 2 Pa.C.S. § 704 is the standard of review that must be applied by Chapter 13 courts. Notably, the OOR fails to identify what aspect of decisional review by appeals officers is discretionary under the RTKL, save an appeals officer's determination as to whether or not to hold a hearing.

The OOR further argues that the Commonwealth Court improperly relied on federal law under the Freedom of Information Act, inasmuch as that law sets forth an explicit *de novo* standard of review on appeal, whereas the RTKL does not. Appellant's Brief at 20–21. The OOR equates the role of federal district courts under the Freedom of Information Act with the role of the OOR under the RTKL. It argues that both are *de novo* fact-finders, and it infers that the Commonwealth Court thus should accord deference to the OOR as a federal

appeals court would accord deference to a federal district court. *Id.* at 21. The OOR argues as well that the Commonwealth Court made an improper analogy to the review of determinations of the Board of Finance and Review, because the facts on such reviews are stipulated facts, whereas under the RTKL, appeals officers of the OOR are the purported fact-finders whose fact-finding should be accorded deference. *Id.* at 20–21.

Finally, the OOR argues that the Commonwealth Court's decision contravenes public policy for several of the reasons stated above, and because of its assertion that as a result of the court's decision, RTKL appeals, which are on a tight timeframe and are supposed to be expeditious, will be slowed down, thus defeating the purpose of the RTKL to assure that RTKL requests are disposed of swiftly and efficiently. *Id.* at 22–26. Along these lines, the OOR contends that the Commonwealth Court's holding places *pro se* requesters at a grave disadvantage because an agency may now use its superior resources to simply relitigate in a Chapter 13 court a document request that it opposes, extending the timeframe for resolution of the issue and creating "insurmountable substantive hurdles" to requesters asserting rights to inspect documents. *Id.* at 25–26. The OOR avers that its appeals officers have decided over 3000 appeals since the enactment of the RTKL, and that approximately 50 appeals to Chapter 13 courts were filed in 2009. *Id.* at 23, 25.

Concerning the record on appeal, the OOR notes that the Commonwealth Court held in a subsequent case that "although . . . the record on appeal consists of the request for public records, the agency's response, the appeal, the hearing transcript, if any, and the final written determination of the appeals officer, it does not expressly restrain a court from reviewing other materials or prohibit a court's supplementation of the record through a hearing or remand" where the record is insufficient to conduct a proper judicial review. *Id.* at 17–18 (quoting *Prison Legal News v. Office of Open Records*, 992 A.2d 942, 947–48 (Pa.Cmwlth.2010)). The OOR interprets this language to be a "retreat" from the Common-

wealth Court's holding in the instant case, in that the Commonwealth Court in *Prison Legal News* is purportedly holding that "independent" court review is permissible only when the record on appeal is "insufficient." *Id.* In general, however, the OOR argues that because the appellate record specified by Section 1303(b) of the RTKL represents a purportedly expanded record in comparison to that provided under the RTKA, a broader scope of review is unnecessary and unwarranted, apparently asserting that in only rare instances will there be an insufficient record.

### Argument of Appellee[11]

Appellee argues that 65 P.S. § 67.1301(a), the provision of the RTKL requiring the decision of the Commonwealth Court to contain findings of fact and conclusions of law based upon the evidence as a whole, establishes a *de novo* standard of review of determinations of the OOR. According to Appellee, this language makes the Commonwealth Court the initial factfinder and dispenses with any need for it to accord deference to the determinations of the OOR appeals officers. Appellee contends this argument is underscored by Section 1309, which, once again, provides: "[t]he provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to this act unless specifically adopted by regulation or policy." 65 P.S. § 67.1309. Again, among the referenced provisions of 2 Pa.C.S. is Section 704, which sets forth the traditional standard of review that applies to appellate review of Commonwealth agency determinations. Regarding the OOR's assertion that the Commonwealth Court in the instant case erred by not following that court's earlier application of the traditional, "deferential" standard of review under the RTKA (construing

11. Appellee notes at the outset that his dispute with PEMA has been resolved but that this appeal is not moot because the Commonwealth Court's decision affects many pending matters, perhaps thousands. The OOR does not take issue with this argument. Certainly the issues herein are capable of repetition and, insofar as this Court has not addressed them, they will evade review unless and until they are addressed by this Court. Thus, mootness is not a concern here. *See Pap's A.M. v. City of Erie*, 571 Pa. 375, 812 A.2d 591, 600–01 (2002); *Consumers Education & Protective Association v. Nolan*, 470 Pa. 372, 368 A.2d 675, 681 (1977).

language identical to Section 1309 as rendering inapplicable only those provisions of Chapter 5 of 2 Pa.C.S.), Appellee contends that those earlier Commonwealth Court decisions were incorrect, further noting that they arrived at their conclusions as to the standard of review without providing any analysis. *See, e.g., Hartman, supra* at 899 n. 3; *Martella, supra* at 635–36 n. 9.[12] Appellee argues that the plain language of Section 1309 of the RTKL establishes that no provision of 2 Pa.C.S. applies to the RTKL.

Relatedly, Appellee argues that it is inconsistent with the concept of deferential appellate review for an appellate court to issue findings of fact, and because the RTKL requires the court's decision to contain findings of fact, the Commonwealth Court was correct in concluding that it was to exercise independent (*de novo*) review of determinations of the OOR appeals officers. Along these lines, Appellee avers that the OOR appeals officers rarely hold hearings, and thus rarely make credibility determinations, thereby removing a key feature of administrative adjudication that normally favors deferential review. By analogy to the many different levels of courts in many contexts that apply *de novo* review without rendering inferior tribunals redundant or superfluous, Appellee contends that allowing the Commonwealth Court to exercise *de novo* review does not render RTKL appeals officers redundant or superfluous.

Appellee argues that although the Freedom of Information Act and the procedure followed by the Commonwealth Court when reviewing decisions of the Board of Finance and Review do not apply directly here, they properly informed the Commonwealth Court's determination because they demonstrate, respectively, that instances exist where agency decisions are reviewed *de novo* and that *de novo* fact-finding by the Commonwealth Court is not unprecedented.

Addressing the OOR's argument that allowing courts to review RTKL determinations under a *de novo* standard will

12. In its decision below, the Commonwealth Court did not address these cases, but simply concluded that the clear language of the RTKL rendered all provisions of 2 Pa.C.S. inapplicable to the RTKL.

defeat the RTKL's purpose to facilitate swift and efficient access to public records, Appellee argues that this Court should exercise its supervisory power and order that docket priority be given to such matters, and should refer this matter to the Appellate Procedural Rules Committee to propose an amendment to Pa.R.A.P. 1736(b), which entitles an agency to an automatic supersedeas upon the filing of a petition for review.

Finally, Appellee **agrees** with the OOR's argument that the Commonwealth Court erred in concluding that the General Assembly intended the scope of review portion of the RTKL merely to describe (but not limit) the items which must be certified to a court for review. Appellee argues that in instances where a fuller administrative record is needed for review, the matter should be remanded to the OOR to re-open the record.[13]

## Standard of Review of OOR Determinations

The two questions accepted for review pertain solely to the proper interpretation of a statute, the RTKL. Because these issues are purely legal ones involving statutory interpretation, we exercise a *de novo* standard of review and a plenary scope of review of the Commonwealth Court's decision. *Hoffman Mining Co., Inc. v. Zoning Hearing Board of Adams Township*, 612 Pa. 598, 32 A.3d 587, 592 (2011); *Holt's Cigar Co., Inc. v. City of Philadelphia*, 608 Pa. 146, 10 A.3d 902, 906 (2011).

**13.** Intervenor PEMA also argues for the *de novo* standard of review. It notes, however, that a *de novo* **standard** of review does not require or authorize a *de novo* **scope** of review, and thus PEMA agrees with Appellee that should a Chapter 13 court require a fuller record, then the matter should be remanded to the appeals officer. In addition, PEMA argues that although the OOR may be entitled to judicial deference with respect to its areas of expertise, there is no good reason for the judiciary to defer to the OOR on the standard or scope of review that applies to OOR determinations.

*Amicus curiae* Pennsylvania School Boards Association argues that the Commonwealth Court should be affirmed in its entirety, on the issues of both standard and scope of review.

■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■ As with all questions of statutory interpretation, our object is to ascertain and effectuate the intention of the General Assembly, giving effect, if possible, to all provisions of the statute under review. 1 Pa.C.S. § 1921(a). Generally, the best indication of legislative intent is the statute's plain language. *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 601 Pa. 449, 974 A.2d 1144, 1149 (2009). Further, the plain language of each section of a statute must be read in conjunction with one another, construed with reference to the entire statute. *E.D.B. v. Clair*, 605 Pa. 73, 987 A.2d 681, 684 (2009) (internal citations omitted). We presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable, and that the General Assembly intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1), (2).

When words of a statute are not explicit, but ambiguous, a reviewing court looks to other principles of statutory construction, among them: the occasion and necessity for the statute; the circumstances under which the statute was enacted; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the legislative and administrative interpretations of such statute. 1 Pa.C.S. § 1921(c).

■■■ With these precepts in mind, we explore whether the Commonwealth Court erred by holding that a Chapter 13 reviewing court's standard of review of an appeals officer's determination is *de novo*.[14] The answer to this question is complicated by the fact that although the RTKL explicitly provides that the provisions of 2 Pa.C.S. (which include a standard of review on appeal) will not apply, it does not explicitly provide for any alternative standard of review on appeal. Moreover, although the RTKL appears on its face to support the Commonwealth Court's determination that Chapter 13 courts conduct a *de novo* review (*see* 65 P.S.

14. A *de novo* standard of review permits the court to determine the case *anew*, including matters pertaining to testimony and other evidence. *See, e.g., Commonwealth v. Emerick*, 373 Pa. 388, 96 A.2d 370, 373–74 (1953).

§§ 67.1301(a) and 67.1302(a), providing that the Chapter 13 courts shall issue decisions that contain findings of fact and conclusions of law), the RTKL also appears to limit the permissible scope of review of such courts (*see* 65 P.S. § 67.1303(b), purportedly circumscribing the record before the Chapter 13 courts). As we determine *infra*, however, Chapter 13 courts are not so hampered in their duties to provide appropriate appellate review. Clearly, the RTKL presents some ambiguities. Given the RTKL's statutory lapses and ambiguities regarding issues of the appropriate standard and scope of review, we are required to engage in statutory analysis. 1 Pa.C.S. § 1921(c).

Our efforts in this regard require that we first identify the actual nature of the controversy. Under the RTKL, agency records are presumed to be public records and must be made available to a requester unless they fall within specific, statutory exceptions. 65 P.S. §§ 67.305, 67.701(a). A document may be exempt from disclosure if it is protected by a privilege (65 P.S. § 67.305(a)(2) or (b)(2)), or is exempt under federal or state law or regulation, or judicial order or decree. 65 P.S. § 67.305(a)(3) and (b)(3). Additionally, the document may be exempt from public disclosure under one of the thirty categories listed in Section 708(b) of the RTKL, 65 P.S. § 67.708(b). *See* 65 P.S. § 67.305(a)(1) and (b)(1). Thus, in relevant terms, the duty of an appeals officer or a Chapter 13 court is simply to determine whether the underlying agency correctly denied a requester access to a document under one of the statutory exceptions.

Although the RTKL grants appeals officers wide discretion with respect to procedure, there appears to be little "discretion" concerning whether a document may or may not be released to a requester. Either the document falls under one of the specific exemptions, or it is a document that must be released. The statutory aspect regarding exemptions under the RTKL is not discretionary. Substantively, discretionary decision-making under the RTKL would thus only arise where a determination must be made regarding conflicting evidence pertaining to whether a document falls under one of

the statutory exemptions. *Cf. In re Doe,* 613 Pa. 339, 33 A.3d 615, 624 (2011) (explaining that pure questions of law are subject to *de novo* review, but fact-intensive inquiries are more suitable to deferential review). Indeed, the OOR has not shown through its arguments that the determinations made by its appeals officers concerning access to records or documents are matters that fall within the appeals officers' discretion.[15]

■ Accordingly, we turn to the OOR's more central contention: that the standard of review articulated in 2 Pa.C.S. § 704 (whether the appeals officer committed an error of law or a constitutional violation or whether the critical findings of fact are supported by substantial evidence) must be applied by Chapter 13 courts. However, as noted, when the issue is one of legal error or constitutional violation, a reviewing court necessarily conducts a *de novo* review in any event. *See, e.g., Station Square Gaming L.P. v. Pennsylvania Gaming Control Bd.,* 592 Pa. 664, 927 A.2d 232, 237 (2007). Indeed, in the present case, it appears that the Commonwealth Court fundamentally made a legal determination, directing the agency to eschew a "blanket approach" to evaluating Appellee's request for documents and to make a (more) reasonable effort to differentiate between documents identifying goods and services that are reasonably likely to endanger public safety and those that are not. *Bowling,* 990 A.2d at 825.[16]

15. Additionally, we categorically reject the OOR's argument that this Court, or the Chapter 13 courts, should defer to the OOR's interpretation of the RTKL with respect to the standard or scope of review. Questions concerning judicial standard and scope of review are not matters falling under the expertise of an administrative agency. On the contrary, these are matters that fall under the power of the courts to decide. **Statutory** questions of standard and scope of review, as here, are questions of law for which the reviewing court's standard of review is *de novo* and its scope of review is plenary. *See Hoffman Mining Co., Inc. v. Zoning Hearing Board of Adams Township,* 612 Pa. 598, 32 A.3d 587, 592 (2011); *Holt's Cigar Co., Inc. v. City of Philadelphia,* 608 Pa. 146, 10 A.3d 902, 906 (2011).

16. We acknowledge that the two questions accepted for review by this Court concern process; however, it is instructive to note, at the very least for purposes of the specific outcome of this case, that the OOR has not illustrated how the Commonwealth Court's substantive determina-

Therefore, even under what the OOR asserts is a "deferential" standard of review, a Chapter 13 court would always conduct a *de novo* review for any appeal, or portions of an appeal, based solely on assertions of legal error or constitutional violation. Pursuing the OOR's line of argument further, "deference" would be thus limited to factual findings or matters that were within the appeals officer's discretion in the first instance. *See, e.g., Station Square Gaming, supra* at 237 (observing that under the explicitly narrow standard of review of this Court set forth at Section 1204 of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. § 1204, this Court conducts a *de novo* review for appeals grounded in assertions of legal error, but otherwise defers to the discretionary decisions of the agency board or determines whether the agency capriciously disregarded the evidence).

Accordingly, our initial statutory focus falls on whether, under the RTKL, the General Assembly intended the appeals officers or the Chapter 13 courts to be the ultimate statutory fact-finders.[17] If appeals officers are to be the statutory "fact-finders," this circumstance would give some indication that the legislature did not intend Chapter 13 courts to conduct full *de novo* review. Rather, it would indicate that, with respect to non-legal and non-constitutional questions, the Chapter 13 courts would conduct some manner of deferential review, such as whether the appeals officer's critical findings of fact are supported by substantial evidence or whether he or she had otherwise abused whatever matters fell within his or her discretion.[18] The RTKL clearly anticipates that some fact-

tion would have been wrong under the standard of review the OOR asserts the Commonwealth Court should have applied. If the Commonwealth Court made a purely legal determination, it was within its power under either a full *de novo* or a more deferential standard of review.

17. The RTKL does not provide for any agency-level review above the decisions made by the appeals officers.

18. We have referred to this approach as a standard of review. *Republic Steel Corp. v. Workmen's Compensation Appeal Board,* 492 Pa. 1, 421 A.2d 1060, 1062 (1980) ("The standard of review of agency proceedings by appellate courts in this Commonwealth is the determination of whether there is substantial evidence to support the findings of the agency."); *see also Morrison v. Department of Public Welfare,* 538 Pa.

finding may be necessary to decide a disputed records request. It specifically provides that in order to justify its determination to deny a requester access to a requested record, the relevant government agency bears the **"burden of proving . . . by a preponderance of the evidence"** that an exception applies. 65 P.S. § 67.708(a) (emphasis added).

As noted previously, findings of fact under the RTKL are mentioned **only** in connection with the Chapter 13 courts, not in connection with the appeals officers. *See* 65 P.S. §§ 67.1301(a) (pertaining to petitions of review from Commonwealth, legislative, and judicial agencies: "The decision of the court shall contain findings of fact and conclusions of law based upon the evidence as a whole. The decision shall clearly and concisely explain the rationale for the decision."); and 67.1302(a) (pertaining to petitions of review from local agencies: same).

Instantly, Sections 1301(a) and 1302(a) of the RTKL appear to give the Commonwealth Court's holding that Chapter 13 courts conduct *de novo* reviews of decisions made by appeals officers a rather solid footing. These provisions point to the Chapter 13 courts, not the appeals officers, as the statutory fact-finders. However, so as to explore all possibilities, we note that these sections specifically state that the court decisions shall **"contain"** findings of fact; they do not specifically state that the court shall **make** these same findings of fact. Thus, there is apparent ambiguity on this point in the statutory scheme, particularly when Commonwealth agencies traditionally have had bestowed upon them the role of statutory fact-finder regarding disputes arising from matters within their statutory delegation of power and expertise. *See, e.g., Republic Steel Corp. v. Workmen's Compensation Appeal Board,* 492 Pa. 1, 421 A.2d 1060, 1062 (1980). These factors, together with the legacy of the Commonwealth Court's standard of review for six years under the amended RTKL, compels us to look beyond Sections 1301(a) and 1302(a).

122, 646 A.2d 565, 570 (1994) (explaining that the standard of review refers to the manner by which an appellate court examines a case, or the "degree of scrutiny" that is to be applied to the appeal).

First, we observe that other provisions of the RTKL suggest the General Assembly's possible intent that Chapter 13 courts are to act as the statutory finders of fact. These sections are specific to questions concerning the authority of the Chapter 13 courts to award attorneys' fees to and impose sanctions upon requesters, or to impose civil penalties upon agencies. 65 P.S. §§ 67.1304–1305. Section 1304 is notably instructive, providing:

§ 67.1304. Court costs and attorney fees

(a) Reversal of agency determination.—If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester **if the court finds** either of the following:

(1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or

(2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

(b) Sanctions for frivolous requests or appeals.—The court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to an agency or the requester **if the court finds** that the legal challenge under this chapter was frivolous.

(c) Other sanctions.—Nothing in this act shall prohibit **a court** from imposing penalties and costs in accordance with **applicable rules of court.**

65 P.S. § 67.1304 (emphases added).

Section 1304(1) and (2) establish that the determination of the appeals officer is to be given no deference in the face of a finding of facts, **made solely by the Chapter 13 court,** that the agency withheld requested records willfully, wantonly, or unreasonably. Also of significance, neither Section 1304 or 1305 (the latter of which bestows authority upon a Chapter 13

court to impose civil penalties when warranted) provides that factual questions concerning a decision whether to award attorneys' fees, or to impose sanctions or penalties be remanded for determination by the appeals officers. On the contrary, Section 1304 is explicit that the Chapter 13 court is the fact-finder.

Next, we turn to Section 1309 of the RTKL, which provides: "[t]he provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to this act unless specifically adopted by regulation or policy." 65 P.S. § 67.1309. Section 1309, like Sections 1301(a), 1302(a), 1304, and 1305, on its face adds support to the Commonwealth Court's ruling. Title 2 contains 2 Pa.C.S. § 704, which articulates the "traditional" standard of "deferential" agency review, and is thus facially made inapplicable to the RTKL.

The OOR argues, however, that Section 1309 gives it the option of adopting regulations or "policies" that make the provisions of 2 Pa.C.S., including 2 Pa.C.S. § 704, applicable to proceedings before OOR appeals officers. Moreover, as previously noted, the Commonwealth Court had interpreted a provision in the RTKA identical to Section 1309 as applying only to Chapter 5 of Title 2, which, again, is a set of provisions limited to matters of practice and procedure before Commonwealth and local agencies, but which do not address a reviewing court's standard of review. *See, e.g., Hartman, supra* at 899 n. 3. Thus, the Commonwealth Court had determined under the old RTKA that, despite the statute generally rendering 2 Pa.C.S. inapplicable to RTKA proceedings, the RTKA did not prohibit the provisions of 2 Pa.C.S. § 704 from applying to appeals from RTKA agency decisions. *See id.*

However, upon further analysis, and in view of the specific provisions governing appeals officers under the RTKL, we are not able to so easily divorce the standard set forth at 2 Pa.C.S. § 704 from the procedural safeguards set forth in Chapter 5 of Title 2. First, we must observe that the Commonwealth Court had never actually engaged in a full legal analysis when it adopted Section 704 for use under the RTKA. *See Hartman, supra* at 899 n. 3; *Martella, supra* at 635–36 n. 9. Rather, it

appears that the Commonwealth Court simply adopted the Section 704 standard when confronted with RTKA amendments that had dropped the "just and proper cause" standard of review but had not replaced that standard for the Commonwealth Court with the broader standard that the amended RTKA provided for the courts of common pleas. *See* 65 P.S. § 66.4(a) and (b) (repealed). In other words, the Commonwealth Court was left with virtually no guidance from the legislature under the RTKA amendments. Sections 1301(a), 1302(a), 1304, and 1305 of the RTKL, by contrast, provide somewhat better guidance from the General Assembly as to its possible intent.

Second, there is the foundational circumstance that if an adjudicatory entity is charged with the responsibility of finding facts in an administrative dispute, due process of some appropriate measure must be afforded to the participants. Chapter 5 of 2 Pa.C.S. safeguards this necessity. That chapter prohibits an administrative agency from issuing an "adjudication" unless the parties were afforded reasonable notice of a hearing and the opportunity to be heard. 2 Pa.C.S. §§ 504, 553. Under Chapter 5, all testimony at such hearings must be stenographically recorded, a full record must be kept of the proceedings, and the parties have the right to submit briefs.[19] 2 Pa.C.S. §§ 504, 506, 553. Finally, Chapter 5 provides that all adjudications shall be in writing, shall contain findings and reasons for the adjudication, and shall be served on all parties. 2 Pa.C.S. §§ 507, 555.

In contrast to Chapter 5 of Title 2, the RTKL provides that appeals officers shall issue final "determinations," not "adjudications." 65 P.S. § 67.1101(b). The appeals officers may, or may not, **in their absolute discretion,** hold a hearing. 65 P.S. §§ 67.1101(b)(3), 1102(a)(2). The taking of testimony and

19. However, with respect to local agencies, a stenographic record may be recorded and a full record may be kept, unless, with respect to agencies that do not record testimony or keep a full record, a party agrees to pay the costs thereof, and then a stenographic and full record of the proceedings shall be made and kept. 2 Pa.C.S. § 553. There is no comparable requirement in Chapter 5 that a local agency must accept briefs of the parties prior to issuing an adjudication.

other evidence is a matter **within the discretion** of the appeals officer. 65 P.S. § 67.1102(a)(2). There is no provision addressing the making of a stenographic record. Although the final determination of the appeals officer must be issued within 30 days of the appeal, and generally requires a written explanation of the reason for the decision, 65 P.S. § 67.1101(b), the appeals officer apparently may simply fail to issue his or her final determination within the 30 days, in which case the appeal will be deemed denied. 65 P.S. § 67.1101(b)(2). Finally, we note that Section 1102(a)(3) of the RTKL provides that among the **mandated** duties of appeals officers during the appellate proceedings themselves, is "consult[ation] with agency counsel as appropriate." 65 P.S. § 67.1102(a)(3). In other words, the RTKL allows appeals officers to consult with counsel for one party in the dispute, but the statute makes no comparable provision regarding the other party in the dispute, namely, the requester.

 This Court has consistently observed that administrative proceedings, which are afforded the "deferential" standard of review found in Section 7 of Title 2, are subject to due process principles. *Pennsylvania Bankers Association v. Department of Banking*, 598 Pa. 313, 956 A.2d 956, 965 (2008) ("We note that the basic tenets of due process apply with equal force in administrative proceedings as they do in judicial proceedings."); *see also Kowenhoven v. County of Allegheny*, 587 Pa. 545, 901 A.2d 1003, 1009 (2006). Such principles mandate that each party be provided an opportunity to present and cross-examine witnesses, present evidence, and make argument. *Kowenhoven, supra* at 1009–10; *see also Fiore v. Board of Finance and Revenue*, 534 Pa. 511, 633 A.2d 1111, 1114 (1993) ("Again we note that procedural due process requires more than notice and hearing, but protects as well the right to an orderly proceeding adapted to the nature of the case. The opportunity to be heard means little unless it occurs in an orderly, regular proceeding appropriate to the nature of the case."). In short, the criteria required for a due process administrative adjudication are those criteria—or similar criteria—set forth in Chapter 5 of Title 2, which, under

Section 1309 of the RTKL, are inapplicable to proceedings before RTKL appeals officers unless adopted through regulation.[20]

Thus, the present statutory scheme presents a significant impediment to adopting the OOR's interpretation of the appropriate standard of review. That is, how could a reviewing court defer to the factual findings of an agency determination—where the court is limited to only a record review to determine whether critical factual findings are supported by substantial evidence—when the agency is not required to hold a hearing, take evidence, find facts, or even issue a written decision? [21]

Proceeding further along the lines of comparing the appeals officer determination process under the **RTKL** to traditional agency adjudication processes, we observe that the traditional adjudicatory process before Commonwealth agencies under the General Rules of Administrative Practice and Procedure, 1 Pa.Code §§ 31.1–35.251, directs an agency head to hold a hearing, or delegate this duty to a presiding officer. 1 Pa. Code §§ 35.123 and 35.185. Thus, the typical adjudicatory process in this Commonwealth often involves at least two tiers, with a presiding or hearing officer or examiner taking evidence and making a **recommended** decision, and a reviewing appellate board (the agency head) serving as the actual finder of facts and the body that makes the final determination of the

20. The OOR, has not adopted regulations similar to the provisions found in Chapter 5 of Title 2; rather, it has only adopted "Interim Guidelines" that do not constitute duly promulgated regulations. We therefore need not opine at this time whether the General Assembly has intended that the OOR's or other agency's adoption of appropriate regulations would alter any consideration of the standard of review.

21. If Chapter 13 courts are not capable of conducting full *de novo* review of determinations made by **RTKL** appeals officers, their statutory review would be materially affected, and at times hampered, by the manner by which the dispute proceeded before the appeals officer. A deemed denial would give the Chapter 13 court applying "traditional, deferential" appellate review very little to review, particularly where a decision might appropriately be resolved upon a determination of "facts." In such a circumstance, it would be absurd for a Chapter 13 court to defer to the nonexistent "findings of fact" of the appeals officer, a result the General Assembly could not have intended.

agency.[22] *See Dowler v. Public School Employees' Retirement Board,* 153 Pa.Cmwlth. 109, 620 A.2d 639, 641 (1993). The RTKL does not provide for the possibility of the procedure typically practiced before the adjudicatory arm of Commonwealth agencies; rather, it provides only for determinations made by appeals officers, who themselves are not constrained by the due process formalities that apply to traditional agency determinations and who are not subject to further agency review.

Thus, the statutory scheme taken as a whole, together with other considerations made pursuant to statutory construction under 1 Pa.C.S. § 1921(c), supports the Commonwealth Court's determination to conduct full *de novo* review of matters appealed to that court from determinations made by OOR appeals officers. Indeed, to come to the result advanced by the OOR, we would have to do the following: (1) ignore or explain away that "findings of fact" are mentioned in the RTKL only in connection with Chapter 13 courts, not appeals officers, and hold that, nevertheless, the appeals officers are the statutory finders of fact; (2) hold that the appeals officers are the finders of fact even though the RTKL provides that they are not required to hold a hearing, take evidence, or even issue a written decision (in that, should the appeals officer fail to issue a written decision, the appeal will be deemed denied); and (3) devise an explanation as to how the findings of fact of appeals officers must be granted deference under a statute that specifically allows appeals officers to **not** adhere to the due process safeguards found in Title 2 In short, for us to accept the argument of the OOR regarding the appropriate standard of review, we would have to effectively rewrite the

22. *See, e.g., Greene v. Public Employees' Retirement System,* 878 A.2d 153, 156 n. 7 (Pa.Cmwlth.2005) ("While the hearing examiner accepts evidence and makes a recommendation, it is the Board that is the finder of fact."); *Renda v. Unemployment Compensation Bd. of Review,* 837 A.2d 685, 692 n. 6 (Pa.Cmwlth.2003) (*en banc*) (noting that the Unemployment Compensation Board of Review is the fact-finder in unemployment compensation cases; however, the Commonwealth Court may base its determination on the referees' proposed findings of fact when the Board adopts them as its own).

RTKL. This is not permitted in a statutory review.[23]

Regarding the OOR's concerns that the functions of the appeals officers may be rendered superfluous and that the expeditious resolution of disputes will be jeopardized, we conclude that these concerns are largely misplaced. Our administrative agency decision-making process generally relies heavily upon a multi-tiered system, where initial determinations are made by a hearing officer or examiner, whose decision becomes final if there is no further appeal. Should there be an appeal, however, then the agency head is typically charged with making a *de novo* review. This system, which stands in stark contrast to the current system under the RTKL that has only one level of administrative scrutiny, in no manner makes the initial agency determination redundant or superfluous. Moreover, we perceive nothing in the RTKL that would prevent a Chapter 13 court from simply adopting the findings of fact and conclusions of law of an appeals officer when appropriate, thus, in the proper case, effectively achieving the result sought by the OOR.

We would also note that the OOR's averments in its brief support to some degree an efficiency in the current **administrative** regime of the RTKL, which incorporates a multi-tiered system, albeit one where the next body beyond the agency appeals officer is a court, not the agency's adjudicatory board. The OOR averred that it has handled more than 3000 appeals since the agency's creation in 2009, but that only approximately 50 appeals went further than the decisions its appeals officers made in 2009. Clearly, these statistics, if accurate, erase any doubt that the General Assembly has created a superfluous review regime with the creation of the RTKL

**23.** Additionally, we reject the OOR's argument that the Commonwealth Court erred by not applying Pa.R.A.P. 1551(a) (which provides in relevant part: "Review of quasi-judicial orders shall be conducted by the court on the record made by the government unit."). The task before the Commonwealth Court, which is the same task now before this Court, was to interpret the legislative intent of a statute, wherein the legislature is free to set forth the standard of review of its determining. The OOR does not satisfactorily explain how this Rule of Appellate Procedure informs such legislative intent, nor do we perceive a basis for Rule 1551(a)'s applicability, particularly in light of our discussion.

appeals officers. The OOR's statistics also help refute its argument that the Commonwealth Court's decision will eviscerate the General Assembly's goal in the RTKL of ensuring swift determinations. Indeed, the statutory processes and time limits for matters brought before appeals officers are not changed in any manner by the Commonwealth Court's determination regarding the proper judicial standard of review.

Noting the above, we view the RTKL in the context of its predecessors. Under both versions of the RTKA, once the agency denied or limited a request for records, the initial appellate process took place within the agency itself. Such a system undoubtedly was burdensome on agencies whose primary focus was on the goals set forth in their enabling statutes, not on public records requests. Thus, the General Assembly, among other things, created a new agency, the OOR, to help facilitate records requests in various manners. Additionally, the General Assembly created, within the OOR and other agencies, a subset of public servants—the appeals officers—who decide appeals from denials of or restrictions on records requests initially made by the agencies in whose custody the records reside. All appeals officers are directed by the RTKL to make their decisions in an expedited fashion, and they are given considerable discretion to achieve this goal. However, the RTKL does not require that the appeals officers conduct their determinations in a manner comporting with the process provided under Title 2. The more streamlined process before appeals officers under the RTKL is apparently designed to dispose of most disputes in an efficient and timely fashion, with the probable contemplation that most disputes will end at the level of the decision of the appeals officer. The averments of the OOR in its brief regarding the high numbers of appeals decided in comparison with the relatively far lower number of appeals taken to the Chapter 13 courts clearly show that this legislative scheme is a success.

In view of all of the above, we hold that the Commonwealth Court did not err by concluding that under the RTKL the Chapter 13 courts are the ultimate finders of fact and that they are to conduct full *de novo* reviews of appeals from

decisions made by RTKL appeals officers, allowing for the adoption of the appeals officer's factual findings and legal conclusions when appropriate.

## Proper Scope of Review of OOR Determinations

 " 'Scope of review' refers to the confines within which an appellate court must conduct its examination, *i.e.*, the 'what' that the appellate court is permitted to examine." *Holt v. 2011 Legislative Reapportionment Commission*, 614 Pa. 364, 38 A.3d 711, 728 (2012) (internal citation marks omitted).

Section 1303(b) of the RTKL provides that "[t]he record before a court shall consist of the request, the agency's response, the appeal filed under section 1101, the hearing transcript, if any, and the final written determination of the appeals officer." 65 P.S. § 67.1303(b). The Commonwealth Court held that this language does not limit the record on appeal, but merely "describes the record to be certified" by the OOR to a reviewing court. In coming to this holding, the court examined Commonwealth Court case law under the RTKA. The RTKA contained a provision similar to Section 1303(b) of the RTKL.[24] The Commonwealth Court noted that several cases under the RTKA, although not directly addressing the issue of the proper scope of review, concerned disputes where the common pleas court or the Commonwealth Court, on further appeal, either conducted a hearing or examined documents *in camera*.[25] The Commonwealth Court also found support for its holding in our decision in *Borough of Churchill, supra*, wherein we approved of tribunals establishing local rules of procedure so long as such rules were not in derogation of statewide rules.

The OOR argues that the cases relied upon by the Commonwealth Court are inapposite because they concerned records that were "one-sided," in that they were limited, purportedly,

24. The RTKA, as amended, provided: "(d) Record on appeal. The record before a court shall consist of the request, the agency's response, the requester's exceptions, if applicable, the hearing transcript, if any, and the agency's final determination, if applicable." 65 P.S. § 66.4(d) (repealed).

25. *See* footnote 8.

to the initial request, the agency's denial, and the agency's final determination. Appellant's Brief at 18. The OOR also asserts that Section 1303(b) of the RTKL provides "for a comparatively expanded record" compared to the record on appeal described in Section 66.4(d) of the RTKA (repealed), and therefore there should be no impetus for a Chapter 13 court to expand the record on appeal. Appellant's Brief at 19.[26]

As previously noted, Appellee agrees with the OOR that the record should not be expanded on appeal. Indeed, Appellee contends that if a Chapter 13 court determines that the record is lacking in some respect, then the proper remedy would be for the court to remand the case to the OOR for additional proceedings. Appellee's Brief at 18–20. The OOR appears to contend that remand would be improper because of the discretion appeals officers are given as to whether to hold a hearing, pursuant to Section 1102(a)(2) of the RTKL, 65 P.S. § 67.1102(a)(2). Appellant's Reply Brief at 6. The OOR acknowledges, however, that on rare occasions, the Commonwealth Court has heretofore remanded matters to OOR appeals officers to hold hearings. *Id.* at 6–7.

Our resolution of the issue of "scope of review" involves both an examination of the concept of scope of review and the application of that concept to the language of the RTKL. The questions brought by the OOR before this Court essentially concern whether Section 1303(b) of the RTKL limits what a Chapter 13 court may review once an appeal is taken from a determination of an appeals officer.

■ "Standard of review" and "scope of review," although distinct, are not concepts that are considered in isolation from one another. In *Morrison v. Department of Public Welfare*, 538 Pa. 122, 646 A.2d 565 (1994), this Court explored the shifting nature of an appellate court's scope of review in the context of a trial court's granting a new trial. The appropri-

26. Despite the OOR's argument that the RTKL expanded a reviewing court's "scope of review," we discern no substantial distinction between Section 1303(b) of the RTKL and Section 66.4(d) of the RTKA (repealed).

ate and unchanging **standard** of review on appeal in such cases is whether the trial court abused its discretion in granting a new trial. *Id.* at 570. We held, however, that the appropriate **scope** of review of a trial court's discretionary decision expanded or contracted on the basis of the reasons given by the trial court for its holding. If the trial court cited a finite set of reasons for the decision, which set of reasons constituted the only basis for the court's granting the new trial, then the reviewing court's scope of review is limited to an examination of those reasons. *Id.* If, however, the trial court's decision left open the possibility that reasons in addition to the stated ones formed the basis for the grant of the new trial, then the reviewing court's scope of review expands to "the entire record [to examine if there is] any reason sufficient to justify a new trial." *Id.*

 We take from *Morrison* the principle that "scope of review" is dependent upon the nature of the task given the reviewing court, relevantly, the standard of review to be applied. As noted previously, when the question before the reviewing court is one of law, the scope of review is plenary, "*i.e.*, a broad scope of review." *Universal Am–Can v. Workers' Compensation Appeal Board (Minteer)*, 563 Pa. 480, 762 A.2d 328, 331 n. 2 (2000). Again, the standard of review for questions of law is *de novo. Station Square Gaming*, 927 A.2d at 237. Here, we have held that Chapter 13 courts exercise a full *de novo* standard of review over determinations made by the appeals officers. Accordingly, it would follow that the scope of review must also be "broad" or plenary; indeed, as the Chapter 13 courts serve as fact-finders, it would also follow that these courts must be able to expand the record—or direct that it be expanded by the mechanism of remand to the appeals officer—as needed to fulfill their statutory function.

The questions raised by the OOR concern whether the General Assembly intended that the scope of review of a Chapter 13 court be limited to those circumscribed matters set forth in Section 1303(b) of the RTKL. We think not. For one, the OOR conceded at oral argument that the record certified

from the appeals officer should contain any relevant evidence or matter brought before the appeals officer, even if it is not listed in Section 1303(b). Indeed, the Commonwealth Court came to this same conclusion in a case decided subsequent to the instant matter. *See Department of Transportation v. Office of Open Records*, 7 A.3d 329 (Pa.Cmwlth.2010):

> [W]e believe that ... the Legislature intended the record to be certified to this Court pursuant to Section 1303(b) to include evidence and documents admitted into evidence by the appeals officer .... ... To hold otherwise—that the record certified to this Court should not contain relevant, probative evidence considered by the OOR—would be an absurd reading of Section 1303(b). *See* 1 Pa.C.S. § 1922(1) (stating 'the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable'). It would also frustrate appellate review of the determination to exclude from this Court's review the evidence that was before the appeals officer.

*Id.* at 333–34.

For another, a full reading of the RTKL evidences a legislative intent that the Chapter 13 courts must necessarily expand the record, when required, to fulfill their statutory functions. As we observed, Section 1304 of the RTKL permits a Chapter 13 court to award costs and attorneys' fees, and to impose sanctions, after the court, not the appeals officer, makes relevant factual findings and legal conclusions. The necessary factual record for the significant decisions that the reviewing courts must make under Section 1304 (and Section 1305 pertaining to civil penalties) would quite likely not be found in a record confined solely to "the request, the agency's response, the appeal filed under section 1101, the hearing transcript, if any, and the final written determination of the appeals officer." 65 P.S. § 67.1303(b). Indeed, Section 1304(a)(1) requires a court to make factual findings regarding whether an agency denying access to records acted "willfully or with wanton disregard" or "otherwise ... in bad faith." 65 P.S. § 67.1304(a)(1). In similar fashion, the RTKL contemplates that the foundational question of whether a record or

document is exempt from disclosure is a factual one. 65 P.S. § 67.708(a) (providing that the relevant government agency bears the "burden of proving ... by a preponderance of the evidence" that an exemption applies).

Therefore, we hold that the Chapter 13 courts have the authority to expand their record to fulfill their statutory role. To interpret Section 1303(b) in any other manner creates a statutory scheme that is absurd, impossible of execution, and unreasonable. 1 Pa.C.S. § 1922(1). Additionally, we note that the General Assembly has not specifically described Section 1303(b) as setting forth a "scope of review." Accordingly, the Commonwealth Court in the instant matter correctly held that it was entitled to the broadest scope of review.

### Conclusion

We hold that the Commonwealth Court correctly held that its standard of review is *de novo* and that its scope of review is broad or plenary when it hears appeals from determinations made by appeals officers under the RTKL.

The decision of the Commonwealth Court is affirmed.

Former Justice ORIE MELVIN did not participate in the decision of this case.

Justice SAYLOR, EAKIN and BAER join the opinion.

Justice SAYLOR files a concurring opinion.

Chief Justice CASTILLE files a dissenting opinion.

Justice TODD files a dissenting opinion.

Justice SAYLOR, concurring.

I join the majority opinion, subject to a few modest differences in the reasoning. For example, in considering what deference may be due to determinations under Section 1102 of the RTKL, 65 P.S. § 67.1102, the majority focuses on the deference associated with determinations which are discretionary by nature. *See* Majority Opinion, at 157–59, 75 A.3d at 467–68. There are other potentially relevant legal tenets

encompassing deference, however, such as the principle that reviewing courts generally will lend a degree of deference to interpretations or constructions by administrative agencies of their enabling statutes. *See, e.g., Nw. Youth Servs., Inc. v. DPW,* 620 Pa. 140, 156–58, 66 A.3d 301, 311–12 (2013). Accordingly, to the extent that OOR determinations reflect a consistent and reasonable approach in fleshing out the boundaries of the statutory exemptions from disclosure in the myriad factual scenarios arising on a daily basis before the agency, I would favor the affordance of some deference to these administrative-level developments. Along these lines, I do not believe that these sorts of boundaries are as concretely apparent from the face of the statute as may be inferred from the majority opinion. *See* Majority Opinion, at 158–60, 75 A.3d at 468.

Despite these differences, I join the majority in lending our support for the Commonwealth Court's approach to judicial review of Office of Open Records determinations. Along with all other Justices, I find that the RTKL contains materially inconsistent directives relevant to the standard and scope of review to be applied, and the Commonwealth Court's implementation of a modified *de novo* review incorporating a flexible remand option appears to make the best of this situation, pending needed legislative refinement.[1] Consistent with the majority opinion, I read the RTKL as affording appeals officers wide latitude to issue determinations which may test the limits of due process, while leaving it to the Commonwealth Court to assure that this constitutional mandate ultimately is vindicated.

Chief Justice CASTILLE, dissenting.

I commend the Court for undertaking the Herculean task of seeking to reconcile inconsistencies abounding in the Right To Know Law ("RTKL"). Nevertheless, for the reasons that follow, I respectfully dissent.

---

1. In my view, the positions reflected in the dissenting opinions, while perhaps reflecting more conventional (and even better) policy and practices, represent too great a departure from the statutory directives, in particular, the investiture in the intermediate court of the responsibility to delineate factual findings. *See* 65 P.S. § 67.1301(a).

At the outset, I agree with the Majority that the statutory scheme devised by the General Assembly offers ambiguous directives regarding the appropriate standard and scope of review in RTKL matters. Engaging in statutory construction of the law, the Majority holds that judicial review of administrative agency appeals from the Office of Open Records ("OOR") is plenary and *de novo,* allowing reviewing courts to adopt an OOR appeals officer's findings of fact and legal conclusions when appropriate. *See* Majority Op. at 168, 173, 75 A.3d at 474, 477. My position with respect to the proper review paradigm in RTKL matters is more closely aligned with that expressed in Madame Justice Todd's Dissenting Opinion. As Justice Todd develops, administrative agency review in matters decided by the OOR plainly should be in the appellate jurisdiction of the Commonwealth Court (where Commonwealth agencies are involved) and in the courts of common pleas (where local agencies are involved), and the courts should defer to the OOR's role as factfinder in the first instance. I also agree with the Commonwealth Court that where the OOR does not hold a hearing, courts acting in their appellate capacities should remand to the OOR for additional findings of fact where necessary. *See Bowling v. Office of Open Records,* 990 A.2d 813, 820–22 (Pa.Cmwlth.2010). By this paradigm, agencies may act as agencies, and courts as courts. I write separately to express several considerations that weigh in my decision to dissent from the Majority's disposition, in favor of the construction above outlined.

In my tenure on the Court, it is difficult to recall a statute that has so quickly generated so much litigation involving seemingly overlooked foundational matters. The plain language of the RTKL reveals little legislative attention paid to establishing a defined means of judicial review following administrative review. This lapse perhaps resulted from an expectation that the vast majority of disputes would be resolved at the agency level, as happens in other Commonwealth agency disputes, and would not put parties to the additional inconvenience, expense, and delay that judicial review—including direct review of fact-bound issues as of right in this

Court—entails. While the expectation of streamlined agency review may have materialized to a degree, the deficiencies in the RTKL, combined with the OOR's apparent inefficacy and inconsistency in performing its regulatory task (a point to which I have written in the past), have left parties with the worst of worlds: an incomplete or unsatisfactory administrative process that all-too-often forces unready and fact-bound merits disputes into the court system. *See Pa. State Educ. Ass'n v. Commonwealth*, 616 Pa. 491, 50 A.3d 1263, 1278–81 (2012) (Castille, C.J., concurring). As a result, the court system is faced with foundational questions regarding the appropriate standard and scope of judicial review, as well as waiver, before a principled process of review may be conducted.

In this confused situation, the Majority adopts a construction of the statute, implicating *de novo* judicial review following the administrative process, a construction whose consequences the General Assembly could not have intended. Indeed, the ambitious timelines for disclosure in the RTKL suggest that the Legislature did not contemplate the circumstances that have unfolded. Pure *de novo* review of all issues (by the Commonwealth Court in its original jurisdiction, for instance) inevitably adds delay and builds expense into the process of accessing public records. As this Court explained in *Mercury Trucking, Inc. v. Pennsylvania Public Utility Commission*, 618 Pa. 175, 55 A.3d 1056, 1075 (2012), *de novo* review in a court of the Commonwealth following administrative review diminishes the utility of administrative proceedings and pointlessly duplicates such proceedings, increasing the cost of litigation. Moreover, the *de novo* judicial review process implicates the structural loss of the OOR's developing expertise in interpreting the RTKL, from which the deferential review standard generally derives. *See id.*

Delay and expense is compounded when untold numbers of appeals are subject to the new procedure. Thus, the *de novo* procedure described by the Majority tasks the Commonwealth Court with holding evidentiary hearings in fact-bound routine

matters involving record request disputes, forcing that court to step out of its traditional appellate role in administrative matters. *See Mohamed v. Commonwealth,* 615 Pa. 6, 40 A.3d 1186, 1200 (2012) (Castille, C.J., dissenting). I question whether the General Assembly intended to burden that already-busy court with the duty to act as a trial court in matters that obviously should be resolved quickly and efficiently at the administrative level. *See id.* Moreover, in cases involving requests of Commonwealth agencies, I question whether the General Assembly either contemplated or intended the consequence that this Court would then be obliged to entertain appeals as of right in cases where the disputes overwhelmingly are factual. To the extent that the statute may be read as intending a *de novo* review process in the Commonwealth Court, with this Court becoming the repository for appeals of right implicating review for error in RTKL matters, the legislative scheme borders on the absurd and unreasonable. *Cf. Pennsylvania Gaming Control Bd. v. City Council of Philadelphia,* 593 Pa. 508, 932 A.2d 869, 870 (2007) (Saylor, J., dissenting, joined by Castille, J.) (a reordering of Supreme Court's functions has consequences regarding resources and procedures for Court and litigants, and should occur only upon very clear and deliberate terms). As with most other matters that commence at the administrative agency level, the proper role for the Supreme Court is to entertain appeals on its discretionary docket, when there are special and important reasons implicated, such as resolution of conflicting precedent, and consideration of legal questions of first impression or of substantial public importance. *See* Pa.R.A.P. 1114.[1] If the intent of the General Assembly was a measured decision to turn the Commonwealth Court into a trial court in these

1. In light of these considerations, I also am unpersuaded by the suggestion of appellee Brian Bowling that the best means by which to implement the legislative intent of providing expeditious access to public records is for this Court to devise rules of appellate procedure by which resolution of RTKL matters would receive "preference." *See* Appellee's Brief at 20–21. Every class of claims or appeals that is "preferred" requires all other classes to be deferred. The preferred solution here is legislative, or failing that, administrative, not a judicial compounding of predicate failures.

cases, and then to reposit direct appeals in RTKL matters in the Supreme Court, then this Court will need to erect a screening mechanism to avoid the inevitable inundation of fact-bound appeals.[2]

What is plain beyond question is that the statute is in need of significant revision and refinement. Short of that, however, the OOR is statutorily positioned to implement the existing legislation in a manner that would bring order out of this chaos, and ensure a fairer and more timely review process. Remarkably, it appears that the OOR still has not promulgated regulations to govern the administrative appeal process. Instead, the OOR employs an appeals procedure described in its "Interim Guidelines" which significantly departs from administrative procedures employed by most other Commonwealth agencies, and which apparently was intended to address due process concerns. *See* 65 P.S. § 67.1102(b) (addressing applicability of 1 Pa.Code Part II—General Rules of Administrative Practice and Procedure, and permitting OOR to adopt regulations, policies, or procedures "contrary" to those of Pennsylvania Code). These Interim Guidelines are not formal regulations promulgated in accordance with the process required by the Commonwealth Documents Law and the Commonwealth Attorneys' Act (which require, *inter alia,* a period of public comment and review by the Attorney General for form and legality). *See* 65 P.S. § 67.504(a); 45 P.S. §§ 1201–1208; 71 P.S. § 732–204(b). As mere informal policy, the OOR's guidelines are also vulnerable to frequent and potentially disruptive *ad hoc* amendment. Unfortunately, the RTKL permits the OOR to operate indefi-

---

2. The OOR's 2012 Annual Report indicates that over two thousand administrative appeals of denied record requests were filed in 2012, of which 56 percent were by citizens, 31 percent were by prisoners, 8 percent were by companies, 4 percent were by media, and 1 percent were by government officials. *See* Pa. Office of Open Records, *2012 Annual Report,* online at https://www.dced.state.pa.us/public/oor/2012 AnnualReport.pdf (last accessed on July 12, 2013). In addition, the OOR addressed nearly 800 requests for OOR records and followed approximately 170 cases through the state courts. The report also notes that, since the first year of operations for the OOR, the number of administrative appeals has increased from 1,159 in 2009 to 2,188 in 2012, nearly doubling. *Id.*

nitely under these Interim Guidelines and outside of the traditional administrative review process. *See* 65 P.S. § 67.1102(b). Concomitantly, the RTKL fails to articulate any failsafe procedures to vindicate litigants' due process rights during the OOR administrative process—again, the result is defaulting cases into the court system following what amounts to meaningless agency review.

I favor legislative refinement to address these concerns. The courts are not in a position to make the necessary adjustments to the RTKL in the case by case method available to us, and our decision regarding discrete aspects of the appellate review process can act as nothing more than a blunt tool where a scalpel is more appropriate. Furthermore, the endeavor is pointless given that the General Assembly can displace the judicial "Band–Aids" at any time by legislative action. Alternatively, I believe the RTKL can be construed as permitting the OOR a significant amount of discretion to formulate procedures, as its experience in implementation dictates: (1) to assist and direct Commonwealth and local agencies respecting how to provide access to public records; and (2) to provide for timely, meaningful and thorough administrative review of challenged Commonwealth and local agency decisions. *See* 65 P.S. § 67.504(a). I also believe that this Court is not powerless to impose some rationality in this area of law, if the present scheme persists.

To that end, if the General Assembly fails to make necessary adjustments and the OOR continues in its failure to establish a regulatory process of administrative review that ensures adequate due process for litigants within the limitations of the flawed authorizing statute, including a process to resolve factual disputes, I would entertain the alternative that all decisions of the OOR should be reversed *per curiam* with a directive to provide such process, and then allow for meaningful appellate review of the agency decision in the proper court, with discretionary review for significant issues available in this Court.

Justice TODD, dissenting.

I respectfully dissent. The Right to Know Law ("RTKL") [1] contains a number of inconsistent provisions, making a determination of the proper standard of review exceedingly difficult, and calling for the General Assembly to set forth a clear articulation of the proper standard and scope of review of Office of Open Records ("OOR") decisions. In the absence of such guidance, however, I submit that issues concerning the granting or denial of access to public records should be reviewed by appellate courts pursuant to the traditional, and issue specific, standards of review set forth below. My reasoning follows.

Initially, I note that the RTKL, by its plain language, makes the provisions of 2 Pa.C.S. inapplicable to the statute.[2] Section 704, 2 Pa.C.S. § 704,[3] which is entitled "Disposition of appeal," and which purportedly sets forth a standard of review, is contained in 2 Pa.C.S.[4] As such, by the clear and

1. 65 P.S. §§ 67.101 *et seq.*

2. "The provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to this act unless specifically adopted by regulation or policy." 65 P.S. § 67.1309.

3. "After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." 2 Pa.C.S. § 704.

4. While embraced in our decisional law as a "standard of review," Section 704 is not truly a standard of review as that jurisprudential concept is traditionally understood. A standard of review is an articulation of the level of deference, or the degree of scrutiny, to be given by a reviewing court to the lower tribunal's decision. *Commonwealth v. Walls*, 592 Pa. 557, 564, 926 A.2d 957, 961 (2007). Additionally, a standard of review is issue specific. Depending upon the question before the court, traditional standards include *de novo*, abuse of discretion, and clearly erroneous. Distilled to its essence, Section 704 instructs that a Commonwealth agency's adjudication must be affirmed unless the court finds the adjudication is violative of the constitution or the law, contains procedural irregularities, or where findings of facts lack a basis. Section 704 does not purport to explain the level of deference to be given to the lower tribunal's decision; rather, it appears

unambiguous terms of the RTKL, the General Assembly intended Section 704 to be inapplicable to the RTKL. Thus, while the General Assembly did not set forth in the RTKL an express statement of the applicable standard of review to be applied when reviewing determinations by the OOR, it made clear what it could not be.

As the proper standard of review is not set forth in the RTKL, and as the General Assembly has declared that provisions of 2 Pa.C.S., including Section 704, are inapplicable to the RTKL, there exists an open question regarding the proper standard of review to be applied in these instances. In the absence of direction by the General Assembly, our Court is free to establish an appropriate standard of review. *See In re Doe,* 613 Pa. 339, 353–54, 33 A.3d 615, 624 (2011).

I find certain factors to be influential in determining the proper standard of review. First, as noted by the Commonwealth Court, the most recent iteration of the RTKL reflects an intent by the legislature that issues regarding access to public records be conducted in an expeditious and efficient manner. *Bowling v. Office of Open Records,* 990 A.2d 813, 822–23 (Pa.Cmwlth.2010). A pure *de novo* review by appellate courts of all issues would add delay and expense to often unrepresented requesters seeking access to public records. Furthermore, while certain determinations by the OOR will surely constitute pure questions of law, and, thus, be subject to *de novo* review, other questions will involve the application of fact to law, entailing some discretion on the part of the OOR. *See, e.g.,* 65 P.S. § 67.102 (determining confidential nature of information includes whether disclosure of information would cause substantial harm); *id.* (determination of trade secret); 65 P.S. § 67.706 (determining whether redaction appropriate); 65 P.S. § 67.708 (determining exemptions from access including reasonable likelihood of physical harm and public safety). Finally, the General Assembly mandates

to act as a limitation on the types of issues that an appellate court may consider. Thus, Section 704 is not instructive in explaining the appropriate degree of deference to be accorded a lower tribunal's decision.

that when a request for access to a record is denied, the appeals officer who considers the appeal shall issue a "final determination" on behalf of the OOR or other agency. 65 P.S. § 67.1102(a)(4). In my view, these aspects of the RTKL counsel towards a reviewing court giving at least some degree of deference to an OOR decision.

Based upon these considerations, and recognizing that the proper standard of review to be applied by a reviewing court is issue specific, I conclude the following standards should be applied by reviewing courts under the RTKL. First, when reviewing factual determinations, an appellate court should be bound by factual findings made by the appeals officer where they are supported by competent evidence of record.[5] Pure questions of law should be reviewed without deference to the appeals officer under our traditional *de novo* standard. Finally, an appeals officer's ultimate determination, regarding whether the release of specific information is appropriate, should be reviewed under the abuse of discretion standard. *See id.* Under this standard, an abuse of discretion "requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Paden v. Baker Concrete Constr. Inc.,* 540 Pa. 409, 412, 658 A.2d 341, 343 (1995). Yet, it is important to understand that the abuse of discretion standard, while deferential, is not without teeth. Indeed, an "abuse of discretion standard includes review of whether the judgment exercised was unreasonable." *Commonwealth v. Walls,* 592 Pa. 557, 565, 926 A.2d 957, 962 (2007).

5. I recognize that the RTKL provides that a court's decision is to "contain" findings of fact and conclusions of law based upon the evidence as a whole. 65 P.S. § 67.1301(a). Yet, an appeals officer is not required to hold a hearing and this decision is not appealable. 65 P.S. § 67.1102(a)(2). Reconciling these seemingly conflicting provisions of the RTKL, I conclude that, where an appeals officer decides not to hold a hearing, the Commonwealth Court may engage in independent fact finding, consistent with its mandate to render a decision with findings of facts, but, where an appeals officer holds a hearing, the officer's factual findings should be subject to a review of whether they are supported by the competent evidence.

In my view, this approach to judicial review is not only consistent with the goals of the RTKL, but also accords OOR decisions a certain level of deference to which they are entitled. Thus, I would remand this matter to the Commonwealth Court to review the determination of the OOR under the standards of review set forth above.