**Richard P. GLUNK, Petitioner**

v.

**DEPARTMENT OF STATE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 27, 2014.

Decided Oct. 17, 2014.

Reconsideration Denied Dec. 8, 2014.

Richard P. Glunk, pro se.

Thomas A. Blackburn, Senior Counsel–In–Charge, Harrisburg, for respondent.

BEFORE: BERNARD L. McGINLEY, Judge, and PATRICIA A. McCULLOUGH, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Richard P. Glunk, M.D. (Requester) petitions, *pro se*, for review of the January 29, 2014 final determination of the Office of Open Records (OOR), granting in part and denying in part his request for certain information from the Department of State (Department) under the Pennsylvania Right–to–Know Law (RTKL).[1]

*Facts and Procedural History*

Requester is licensed to practice medicine by the State Board of Medicine (Board). Following an investigation by the Department, a prosecuting attorney filed disciplinary charges against Requester for allegedly engaging in unprofessional conduct when treating three patients. The Board eventually dismissed the charges in February 2009. Thereafter, Department prosecutors filed additional charges against Requester, contending that he engaged in immoral conduct by attempting to influence a Board member in the prior disciplinary matter. A hearing examiner, Joyce McKeever, Esquire,

presided over the case, and, on December 1, 2010, found that Requester had engaged in immoral conduct and imposed as a sanction a sixty-day license suspension, a $5,000.00 civil penalty, and fifty hours of continuing education. On December 20, 2010, Requester filed a motion to reopen the record, but the case was assigned to another hearing examiner because McKeever was on vacation at that time. The new hearing examiner denied Requester's motion.

On June 26, 2012, Requester submitted twelve RTKL requests for information to the Department. In request 1, Requester sought "[a]ll communications to and from Mark Greenwald [2] that refer to [Requester] or involve [Requester] in any way, including, but not limited to, emails, letters, phone records, notes, memos, messages" (Request 1). In requests 2 through 8 and 10, Requester sought the same information contained in his first request, but from different people, namely Kerry Maloney[3] (Request 2); Edward Rendell[4] (Request 3); Basil Merenda[5] (Request 4); Peter Marks[6] (Request 5); the Board and/or its members (Request 6); David Grubb[7] (Request 7); Andrew Demarset[8] (Request 8); and Joyce McKeever[9] (Request 10).

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. Greenwald is a prosecuting attorney for the Department's Bureau of Enforcement and Investigation who provided legal advice to Department employees during their investigation of Requester.

3. Maloney is a prosecuting attorney for the Department's Bureau of Enforcement and Investigation who filed a formal disciplinary action against Requester.

4. Rendell was then Governor of Pennsylvania.

5. Merenda was then Commissioner of the Bureau of Professional and Occupational Affairs.

6. Marks was then Executive Deputy Chief Counsel for the Prosecution Division of the Office of Chief Counsel for the Department.

7. Grubb is a prosecuting attorney for the Department's Bureau of Enforcement and Investigation who provided legal advice during an investigation of Requester.

8. Demarset is a prosecuting attorney for the Department's Bureau of Enforcement and Investigation who filed a formal disciplinary action against Requester.

9. As noted above, McKeever is a hearing examiner for the Office of Chief Counsel of the Department.

In requests 9, 11, and 12, Requester sought: "[a]ll records regarding vacation time for Joyce McKeever for the time period 12/01/2010 through 01/31/2011. Including but not limited to schedules, requests, memos" (Request 9); "[a]ll records, notes, memos, drafts, etc. of or regarding final order and adjudication of Joyce McKeever regarding [Requester]" (Request 11); and "[a]ll communications regarding recusal of [the Board] in case regarding [Requester]" (Request 12).

On July 9, 2012, Requester asserted that he had not received a timely response from the Department, within five business days of his requests or July 3, 2012,[10] resulting in deemed denials, and he filed twelve appeals with the OOR, which were consolidated. By letter dated July 10, 2012, the OOR notified the parties that Requester's appeals were received. On July 16, 2012, the Department advised the OOR that it had, in fact, responded to Requester's requests by letter dated July 3, 2012, in which it notified Requester that, under section 902(b)(1) and (2) of the RTKL, it was extending its deadline to respond to the requests to August 3, 2012.[11] After receiving the Department's correspondence, the OOR issued a final determination on July 18, 2012, dismissing Requester's appeals as premature because the Department had until August 3, 2012, to respond to Requester's requests.

On August 2, 2012, the Department replied to Requester's requests and asserted the following grounds for denial: records responsive to Requests 1, 2, 4, 5, 7, and 8 were exempt from disclosure as noncriminal investigation documents pursuant to section 708(b)(17) of the RTKL, 65 P.S. § 67.708(b)(17); records related to Requests 3, 4, and 5 were not in the Department's possession, custody, or control, and an agency is not required to create a record that does not exist under section 705 of the RTKL, 65 P.S. § 67.705; records responsive to Requests 4, 5, 6, 9, 10, and 11 were exempt from disclosure under the predecisional deliberation exception in section 708(b)(10) of the RTKL, 65 P.S. § 67.708(b)(10); Requests 4, 5, 6, 9, 10, and 11 were exempt from disclosure under the notes and working papers exception in section 708(b)(12) of the RTKL, 65 P.S. § 67.708(b)(12); Request 5, 6, and 12 were protected from disclosure by the attorney-client privilege and/or the attorney-work product doctrine under section 305(a)(2) of

10. Section 901 of the RTKL provides that, where an agency does not respond to a written request for records within five business days, the request shall be deemed denied; thus, a response by the Department was due by July 3, 2012. *See* 65 P.S. § 67.901 ("Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request. All applicable fees shall be paid in order to receive access to the record requested. The time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency. If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.")

11. *See* 65 P.S. 67.902(b)(1) and (2) (stating that within five business days of receiving a request, the agency's open records officer may send requester notice that "the request for access is being reviewed, the reason for the review, a reasonable date that a response is expected to be provided and an estimate of applicable fees owed when the record becomes available. If the date that a response is expected to be provided is in excess of 30 days ... the request for access shall be deemed denied unless the requester has agreed in writing to an extension to the date specified in the notice.")

the RTKL, 65 P.S. § 67.305(a)(2); some of the records responsive to Request 5 were not in the possession of the Department because they were transitory records disposed of in accordance with the Department's record retention policy under section 507 of the RTKL, 65 P.S. § 67.507; and, finally, Request 9 was granted for records regarding vacation times, but denied for schedules, vacation requests, and memos, because this information was protected by the personal security exception under section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii). (Reproduced Record (R.R.) at 77a–104a.)

Meanwhile, Requester filed an appeal to this Court on August 15, 2012, asserting that the OOR improperly dismissed his appeals as premature. Specifically, Requester contended that the OOR failed to consider a postmarked envelope as evidence that the Department provided an untimely response to his requests. By single-judge order dated December 5, 2012, this Court remanded to the OOR for consideration of the postmarked envelope that contained the Department's invocation of a thirty-day time extension.

On January 11, 2013, the Department stipulated before the OOR that its July 3, 2012 letter purporting to extend the deadline was untimely because it was not mailed to Requester until July 5, 2012, two days beyond the five business days provided by section 901 of the RTKL. Consequently, the Department conceded that Requester's requests were deemed denied as a matter of law.

By correspondence dated January 14, 2013, the OOR sent the parties an "Interim Order/Scheduling Order" and invited both parties to supplement the record by submitting information in support of their positions. Neither party requested a hearing. Requester had a deadline of January 24, 2013, to submit information, and the Department had a deadline of February 4, 2013. In its order, the OOR provided specific instructions to both parties regarding the submission of information, including the direction that statements of fact were to be supported by affidavits, as well as guidance on submitting records that may involve a third party. (R.R. at 17a–18a.)

On January 17, 2013, Requester filed a petition for allowance of appeal to the Pennsylvania Supreme Court, challenging this Court's December 5th order remanding the matter to the OOR. While that appeal was pending, on January 23, 2013, Requester supplemented the record in support of his position with a statement explaining his belief as to why each of the requested records is in fact a public record; however, he failed to address the Department's specific grounds for denial. On February 4, 2013, the Department supplemented the record with a position statement outlining the asserted exceptions and privileges, which was accompanied with affidavits that attested to the nonexistence of records and the proper destruction of records pursuant to the Department's policy. The affidavits also explained why certain requested records were exempt from disclosure under the following exceptions and privileges: noncriminal investigations, notes and working papers, predecisional deliberations, attorney-client privilege, and the attorney-work product doctrine.

Also on February 4, 2013, Requester filed a second appeal to this Court, asserting that because the OOR did not deliver a final order within thirty days of receiving his appeals, the appeals were deemed denied by the OOR. This Court, however, concluded that the OOR could not be deemed to have denied Requester's appeals because the OOR was prohibited from considering the matter while Requester's petition for allowance of appeal re-

mained pending in the Supreme Court. On June 19, 2013, the Supreme Court denied Requester's petition for allowance of appeal. Thereafter, by order dated August 15, 2013, this Court remanded the matter to the OOR for issuance of a final determination.

By letter dated September 17, 2013, the OOR informed the Department that it had "reviewed the filings previously submitted by the parties and require[d] additional information for the record." (R.R. at 65a.) The letter directed the Department:

> to provide a log of responsive records addressing [r]equests identified below accompanied by an affidavit which must be specific enough to permit the OOR to ascertain how an alleged ground for denial applies. All factual statements, including the nonexistence of a record or that no other responsive records exist, must be supported by the affidavit signed under penalty of perjury by an individual with actual knowledge.

(R.R. at 65a.)

In response, the Department submitted correspondence on October 11, 2013, again addressing its legal grounds for denying the request and attaching additional affidavits.

On January 29, 2014, the OOR issued its final determination, granting in part and denying in part Requester's appeals. The OOR found that, with the exception of Request 9, the Department met its burden of establishing that the requested records were either exempt from disclosure under an exception of the RTKL or do not exist.

More specifically, upon review of the Department's affidavits, the OOR concluded that Requests 1, 2, 4, 7, and 8 were exempt from disclosure under the noncriminal investigation exemption at section 708(b)(17) of the RTKL, 65 P.S. § 67.708(b)(17), provisions of what is referred to as the Licensing Boards and Commissions Law,[12] and/or the Medical Care Availability and Reduction of Error (MCARE) Act.[13] With respect to Requests 3, 4, and 5, the OOR concluded that the Department's affidavits established that no responsive records existed within its possession, except for those records that the Department properly excluded from Request 4 as noncriminal investigation records. (Final Determination at 13–16.)

Similarly, the OOR concluded that the Department's affidavits demonstrated that records responsive to Requests 6 and 12 were exempt as records reflecting predecisional deliberations or were protected by the attorney-client privilege. In making this specific determination, the OOR noted that the Department identified a December 15, 2009 e-mail chain and attached letter discussing official action to be taken in regard to the disciplinary proceedings against Requester and found that the Department's affidavits demonstrated that the e-mail chain was created prior to, and formulated the basis for, agency action by the Board and, consequently, was deliberative in character. The OOR further concluded that seven records identified by the Department contained communications between the Board and its attorneys and were protected under the attorney-client privilege. (Final Determination at 16–17.)

Concerning Request 9, the OOR concluded that McKeever's affidavit established that records regarding her vacation time, including her personal calendar for work, were partially exempt under the notes and working paper exception at section 708(b)(12) of the RTKL and that the Depart-

---

**12.** Act of July 2, 1993, P.L. 345, *as amended,* 63 P.S. §§ 2201–2207.

**13.** Act of March 20, 2002, P.L. 154, *as amended,* 40 P.S. §§ 1303.101–1303.910.

ment correctly redacted this personal information. However, the OOR ordered the Department to provide Requester with records of McKeever's leave requests and approvals for leave of absences that she took during the specific time period requested by Requester. Furthermore, the OOR determined that any request for McKeever's available leave allowances or unused vacation time did not fall within the scope of Requester's request; accordingly, the OOR concluded that the Department was not required to provide this information to Requester. Finally, in adjudicating Requests 10 and 11, the OOR concluded that no communications concerning Requester existed and that the Department's affidavits were sufficient to establish their nonexistence. (Final Determination at 17–21.) Requester then filed a timely petition for review with this Court.[14]

**14.** We independently review an appeal from a determination by the OOR and may substitute our own findings of fact for that of the agency. *Bowling v. Office of Open Records*, 621 Pa. 133, 75 A.3d 453, 477 (2013). Our scope of review is plenary and our standard of review is *de novo. Id.*

**15.** These issues are:

1. Can the [OOR] request in detail additional submissions after determining that [the Department] has failed to meet its burden of proof?
2. Does an act of bad faith invalidate all affidavits in opposition to an appeal of a requester by [the Department's open records officer]?
3. If the [OOR appeals officer] initially rules that [R]equester does not need to address the OOR's denials because they were not timely, can the [OOR appeals officer] lie about her ruling in her final determination?
4. Can [the Department's open records officer] destroy incriminating emails in response to a RTKL request?

## Discussion

■ Initially, we note that Requester identifies nine issues for review in the statement of questions involved portion of his brief.[15] However, giving Requester the benefit of the doubt and construing his submissions liberally, Requester only raised four of these issues in his petition for review.[16] It is well-settled that if an issue is not raised in a petition for review, then the issue is waived for purposes of appellate review, even if a petitioner addresses the issue in his brief. Pa. R.A.P. 1513; *Jimoh v. Unemployment Compensation Board of Review*, 902 A.2d 608 (Pa. Cmwlth.2006) (concluding that an issue argued in the brief on appeal, but not raised in the petitioner's petition for review or fairly comprised therein is waived). Accordingly, we will proceed to address only those issues that Requester raised in his petition for review (or were fairly comprised therein), listed in his statement of the questions involved,[17] and addressed in the argument section of his brief.

5. Can an email chain containing a letter discussing the actions of the medical board ten months earlier and/or reply to the email be denied as a predecisional deliberation?
6. Is an appointment calendar that confirms other public information deniable under [section] 708(b)(12) [of the RTKL]?
7. Are vacation time quotas of public employees public information?
8. Is the OOR able to deny access to a document that refers to a destroyed or missing document?
9. Does the [the Department] waive all rights to denials if it fails to make a timely response?

Brief for Requester at 5.

**16.** Specifically, Requester raised issues 2, 4, 5, and 6 above in his petition for review. (*See* Petition for Review, ¶¶ 8, 10, 12, and 16.)

**17.** In the argument section of his brief, Requester asserts that the OOR erred in concluding that certain documents were protected under the noncriminal investigation exception. According to Requester, the ex-

In his first two issues, Requester challenges the veracity and credibility of Heidi Barry, the Department's open records' officer. Requester first contends that Barry attested to a falsehood in her initial affidavit concerning the mailing date of the Department's extension letter and asserts that this alleged act of bad faith invalidates the subsequent affidavits she provided.

In her affidavit of July 13, 2012, Barry confirmed her position with the Department, acknowledged that the Department received Requester's requests, and averred that a 30–day extension letter was mailed to Requester on July 3, 2012. (R.R. at 13a.) After Requester introduced evidence of the envelope postmarked on July 5, 2012, the Department stipulated that the notice of extension was, in fact, untimely, which resulted in the deemed denial of Requester's requests. (R.R. at 15a.) Upon review, we conclude that Barry's erroneous statement of fact regarding the letter's mailing date does not render her subsequent affidavits unreliable *per se*. It is well-settled that the truthfulness of the affiant is a matter that goes to the credibility and weight of the evidence, which are assessments to be made by the fact-finder. *See Barylak v. Montgomery County Tax Claim Bureau*, 74 A.3d 414, 417 (Pa.Cmwlth.2013).

Requester also alleges that Barry either lied in an affidavit or destroyed documents because Barry stated that she reviewed a disc of former Commissioner Merenda's computer and could not locate any e-mails related to Requester, while Tammy Dougherty, an administrator for the Board, located a document concerning Requester. However, Dougherty's affidavit establishes that she searched different files of the Board and could not locate any communications regarding Requester, except for a December 15, 2009 e-mail chain between former Commissioner Merenda, former Executive Deputy Chief Counsel Marks, and others that concerned the Board's action in dismissing the disciplinary matter against Requester. (R.R. at 67a, 69a.) The fact that Dougherty located an e-mail chain when searching through a different set of documents than those that Barry reviewed does not tend to undermine Barry's credibility or demonstrate any impropriety on her part.

Despite Requester's protestations to Barry's affidavits, the OOR accepted them as credible evidence, and it was within the province of the OOR, as the initial fact-finder, to do so. In exercising our role as fact-finder, having the authority to substitute our assessments of the evidence for that of the OOR, *see Bowling v. Office of Open Records*, 990 A.2d 813, 818 (Pa. Cmwlth.2010) (*en banc*), *aff'd*, 621 Pa. 133, 75 A.3d 453 (2013) ("*Bowling I*"), we discern no basis upon which to upset or replace the OOR's credibility determinations. Therefore, we conclude that Requester's arguments challenging the veracity of Barry's affidavits lack merit.

In his next issue, Requester maintains that the Department failed to estab-

---

ceptions under the RTKL do not "protect communication with [the Department's] prosecutors outside the scope of their employment that are used to assist a politically-connected family in civil legal matters or Blackberry messaging from the family's lawyer to the prosecuting attorneys during [Requester's] hearing." (Requester's brief at 17.) Requester, however, did not raise this issue in his statement of questions involved;

therefore, it is waived. *Williams v. Workers' Compensation Appeal Board (USX Corporation–Fairless Works)*, 862 A.2d 137, 141 (Pa. Cmwlth.2004) ("Claimant has failed to raise this issue anywhere within his Statement of the Questions Presented, and for that reason, it is waived."); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

lish that the December 15, 2009 e-mail chain noted above is exempt from disclosure under the predecisional deliberation exception. In particular, Requester asserts that the correspondence is not predecisional because it concerns a decision that the Board made ten months earlier, in February 2009, when it dismissed the disciplinary action against him.

■ The objective of the RTKL "is to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel,* 615 Pa. 640, 45 A.3d 1029, 1042 (2012). Pursuant to section 305 of the RTKL, a record in the possession of a Commonwealth agency, like the Department in this case, shall be presumed to be a public record, unless: the record is exempt under section 708 of the RTKL; the record is protected by a privilege; or the record is exempt from disclosure under any other federal or state law or regulation or judicial order. Section 305 of the RTKL, 65 P.S. § 67.305. An agency bears the burden to prove, by a preponderance of the evidence, that a record is protected from disclosure under one of the enumerated exceptions or contains privileged material. Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1); *Department of Transportation v. Drack,* 42 A.3d 355, 364 (Pa. Cmwlth.2012).[18]

■ In pertinent part, section 708(b)(10)(i)(a) of the RTKL exempts from disclosure a record that reflects "[t]he internal, predecisional deliberations of an agency, its members, employees or officials ... including predecisional deliberations relating to ... contemplated or proposed policy or course of action or any research, memos or other documents used in the

predecisional deliberations." 65 P.S. § 67.708(b)(10)(i)(a). To prove this exception, the Department is required to show that: "(1) the information is internal to the agency; (2) the information is deliberative in character; and, (3) the information is prior to a related decision, and thus 'predecisional.'" *Carey v. Department of Corrections,* 61 A.3d 367, 379 (Pa.Cmwlth. 2013). In his brief, Requester does not contend that the Department failed to meet the first two elements, thereby conceding that the Department has satisfied its burden of proof in these regards. *See Van Duser v. Unemployment Compensation Board of Review,* 164 Pa.Cmwlth. 96, 642 A.2d 544, 548 n. 3 (1994) ("Issues not briefed are waived."). Accordingly, we limit our analysis to addressing the argument that Requester made with respect to the third element.

Relying on the affidavit of Dougherty, the Department asserted that the e-mail chain contained an inquiry letter dated December 15, 2009, that was received in the Board office and was addressed to former Deputy Commissioner Mark Vessella and Chairman Ollice Bates, MD, Jr. Dougherty affirmed that she e-mailed the letter to former Deputy Commissioner Vessella, former Commissioner Merenda, and former Executive Deputy Chief Counsel Marks. Dougherty averred that the letter "concern[ed] the Board's action in dismissing the disciplinary matter against [Requester]" and further stated that counsel Marks "responded to discuss" the "appropriate action" that the Board should take. (R.R. at 69a.)

Based on Dougherty's averments, we conclude that the e-mail chain occurred prior to the related decision of the Board

---

18. Because the RTKL "is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions, the exemptions from disclosure must be narrowly construed." *Bowling I,* 990 A.2d at 824.

in determining whether to provide a response to the inquiry letter. Such a response, in turn, necessarily involves a "contemplated or proposed . . . course of action," 65 P.S. § 67.708(b)(10)(i)(a), to be taken by the Department with the assistance of counsel Marks at a date subsequent to the letter itself.[19] Requester's assertion that the December 15, 2009 e-mail chain related solely to a previous decision by the Board, and did not contemplate future action, is a supposition that is directly contradicted by the statements in Dougherty's affidavit. As the initial fact-finder, the OOR acted within its discretion in accepting the averments in Dougherty's affidavit over Requester's countervailing contention. Therefore, we conclude that the OOR did not err in determining that the e-mail chain was "predecisional" in the sense that it contained information prior to a related decision by the Board. *See Carey*, 61 A.3d at 379. In so holding, we note that Requester does not differentiate the letter from the rest of the e-mail chain, and he only challenges the entire e-mail chain on the ground that it concerns a previous decision of the Board. The issues of whether the e-mail chain, or the letter standing alone, is "internal" to the Department or is "deliberative in character" are not before this Court.

■ In his final issue, Requester contends that the OOR erred in concluding that McKeever's work calendar was exempt as personal notes and working papers because McKeever's affidavit was conclusory and insufficient to meet the exception and her supervisor had access to the calendar.

Section 708(b)(12) exempts from disclosure "[n]otes and working papers prepared by or for a public official or agency employee used solely for that official's or employee's own personal use, including telephone message slips, routing slips and other materials that do not have an official purpose." 65 P.S. § 67.708(b)(12). This Court held in *City of Philadelphia v. Philadelphia Inquirer*, 52 A.3d 456, 461–62 (Pa.Cmwlth.2012) (*en banc*), that the calendars of city officials, whereupon they documented and scheduled both their personal and professional activities, were exempt from disclosure under the personal notes and working papers exception. In so determining, this Court noted that the requested calendars were produced exclusively for the convenience of the city officials' personal use and were not dispersed outside of the officials' offices. We further explained that the term "personal" in section 708(b)(12) of the RTKL covers both personal and professional notations on a work calendar:

> "Personal" within this definition does not mean that it has to involve a public official's personal affairs—a message slip that his wife called—because those types of documents are not covered by the RTKL; it covers those documents necessary for that official that are "personal" to that official in carrying out his public responsibilities.

*Philadelphia Inquirer*, 52 A.3d at 462 (citation omitted).

Here, contrary to Requester's arguments, McKeever explained the notes that are documented on her calendar in sufficient detail and also described the personal nature of these notes. In her affidavit,

---

19. Notably, there is nothing in section 708(b)(10)(i)(a) of the RTKL that requires a predecisional deliberation by an agency be one that eventually accumulates into an official adjudication. Rather, the exemption covers all documents used during the deliberation process where agency officials and/or employees "contemplate" or "propose" future course of agency action. 65 P.S. § 67.708(b)(10)(i)(a).

McKeever attested that the calendar is for her own personal use and includes the times and locations of events, meetings, and hearings that she has to attend; leaves of absence that she has scheduled; work tasks that she has to complete; and personal reminders that are unrelated to her employment with the Department. Although McKeever averred that her supervisor is the only other person who has *access* to the calendar, she did not state that her supervisor *uses* the calendar, and the averments in her affidavit as a whole demonstrate that the calendar was produced exclusively for McKeever's personal convenience. (R.R. at 68a.) Therefore, we conclude that because McKeever's affidavit sufficiently detailed the notations on her calendar, and these entries constitute personal notes and working papers pursuant to *Philadelphia Inquirer*, the OOR was correct in concluding that her calendar was exempt from disclosure.

Having determined that Requester's issues on appeal either are waived or lack merit, we conclude that the OOR did not err in its final determination.

Accordingly, we affirm.

### *ORDER*

AND NOW, this 17th day of October, 2014, the January 29, 2014 final determination of the Office of Open Records is affirmed.