IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ruben M. Collazo,                             :
                          Petitioner          :
                                              :  No. 581 C.D. 2019
          v.                                  :  SUBMITTED: October 4, 2019
                                              :
Pennsylvania Gaming Control Board,  :
                          Respondent          :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED: December 16, 2019

Petitioner Ruben M. Collazo (Collazo) appeals *pro se* to our Court from a Final Determination issued by the Pennsylvania Office of Open Records (OOR) on April 15, 2019. Through this Final Determination, the OOR denied Collazo's appeal of the Pennsylvania Gaming Control Board's (Board) February 4, 2019 disposition of Collazo's Right to Know Law[1] (RTKL) records request, which related to an investigation conducted by the Board regarding Mount Airy Casino Resort (Casino) in Mount Pocono, Pennsylvania. Therein, the Board partially denied Collazo's request and also informed him that the remaining, sought-after records do not exist. Upon review, we affirm the OOR.

## Facts and Procedural History

On December 3, 2018, David S. Tepper, Esquire, Assistant Enforcement Counsel with the Board's Office of Enforcement Counsel, mailed a letter to Collazo.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

Board's Supplemental Reproduced Record (S.R.R.) at 46a.[2] In this letter, Tepper explained that the Board's Bureau of Investigations and Enforcement had conducted an investigation of the Casino in response to complaints Collazo had filed with the Board. *Id.*[3] The Office of Enforcement Counsel reviewed the results of this investigation and concluded that neither the Casino itself nor its employees violated the Pennsylvania Race Horse Development and Gaming Act[4] (Gaming Act) or the Board's regulations. *Id.* As a result, the Office of Enforcement Counsel did not take action against the Casino and closed the investigation that had been sparked by Collazo's complaints. *Id.*

On December 31, 2018, the Board received a records request from Collazo, made pursuant to the RTKL, seeking the following:

> 1. Transcript[s] of interview[s], inter[r]ogatories, videos conducted with [the Casino] employees [and] patrons named in "patron complaint" filed by . . . Collazo entitled "The Village People."
>
> 2. Specifically, employee slot attendant Anthony J. Scalzo[;] patron identified as "Tina the mayor of the village people;" patron named Kathleen Stay; patron identified as "Fluffy" by slot attendant Anthony J. Scalzo; hostess assigned to take slot machines "Out of Service" by [the Casino] at the request of patron further identified as Tina "the Mayor of the Village People."
>
> 3. The number and names of individuals evicted from [the Casino] as a result of the above mentioned complaint.

---

[2] We granted Collazo *in forma pauperis* status on May 23, 2019, which had the additional effect of exempting him from the standard requirement that the petitioner or appellant file a reproduced record. *See* Pa. R.A.P. 2151(b). In his stead, the Board has elected to submit what it calls the "Supplemental Reproduced Record." S.R.R. at 1a n.1.

[3] These complaints were not part of the record.

[4] 4 Pa. C.S. §§ 1101-1904.

4. The number and names of patrons who have been identified by employees of [the Casino] as having a gambling or drinking problem pursuant to Appendix 33 "Details of [the Casino's] . . . Compulsive and Problem Gambling Plan."

5. The number and names of individuals or convicted felons, who have been evicted or excluded by the [Board] pursuant to [58 Pa. Code] § 511a.3(a)(4)(ix):

> "Persons who have performed an act or have a notorious or unsavory reputation that would adversely affect public confidence and trust in gaming, including, being identified with criminal activities in published reports of various Federal and State legislative and executive bodies that have inquired into criminal or organized criminal activities."

S.R.R. at 1a. The Board responded to Collazo on February 4, 2019. It informed him that parts 1 and 2 of his request were denied pursuant to the RTKL's exemption for records pertaining to internal, predecisional deliberations,[5] as well as the exemption

---

[5] This exemption is found in Section 708(b)(10)(i) of the RTKL and, with some caveats that are not relevant here, exempts from disclosure:

> A record that reflects:
>
> > (A) The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.
>
> > (B) The strategy to be used to develop or achieve the successful adoption of a budget, legislative proposal or regulation.

65 P.S. § 67.708(b)(10)(i).

covering noncriminal investigations.[6] *Id.* at 2a-3a. With regard to parts 3 through 5 of Collazo's request, the Board stated that he was improperly seeking to use the RTKL to compel the Board "to answer questions, verify statements, or research issues[,]" and that, in any event, the desired records did not exist. *Id.* at 3a-5a. Collazo appealed the Board's decision to the OOR on February 12, 2019.

---

[6] This exemption is found in Section 708(b)(17) of the RTKL and exempts from disclosure:

> A record of an agency relating to a noncriminal investigation, including:
>
> (i) Complaints submitted to an agency.
>
> (ii) Investigative materials, notes, correspondence and reports.
>
> (iii) A record that includes the identity of a confidential source, including individuals subject to the act of December 12, 1986 (P.L. 1559, No. 169), known as the Whistleblower Law [43 P.S. §§ 1421-1428].
>
> (iv) A record that includes information made confidential by law.
>
> (v) Work papers underlying an audit.
>
> (vi) A record that, if disclosed, would do any of the following:
>
> > (A) Reveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or an executed settlement agreement unless the agreement is determined to be confidential by a court.
> >
> > (B) Deprive a person of the right to an impartial adjudication.
> >
> > (C) Constitute an unwarranted invasion of privacy.
> >
> > (D) Hinder an agency's ability to secure an administrative or civil sanction.
> >
> > (E) Endanger the life or physical safety of an individual.

65 P.S. § 67.708(b)(17).

As part of its response to Collazo's administrative appeal, the Board submitted unsworn affidavits from Elizabeth Lanza, Director of the Board's Office of Compulsive and Problem Gambling, and Linda S. Lloyd, the Board's Director of Hearings and Appeals. Ms. Lanza stated that the Office of Compulsive and Problem Gambling is required to maintain a list of individuals who have been involuntarily barred from gambling establishments in Pennsylvania. *Id.* at 24a. This list can be found on the Board's website. *Id.* Ms. Lanza also stated that her Office "do[es] not keep statistics, a list, or a database from which we could determine what criteria the Board has used to place individuals on [the] Involuntary Exclusion List." *Id.* In addition, Ms. Lanza averred that, by law, such facilities are only required to notify the Board about a patron exhibiting drinking or gambling problems where the patron is forcibly removed due to their violation of a voluntary, self-imposed ban. *Id.* at 24a-25a. In other words, a casino only has to notify the Board when they forcibly remove a patron for problem behavior ***and*** that person is on the voluntary, self-imposed ban list. However, these gambling establishments do not otherwise provide the Board with information about patrons identified as having trouble keeping their drinking or gambling in check or who have been removed from a facility's premises as a result of such problems. *Id.*

Similarly, Ms. Lloyd declared that the Board's Office of Hearings and Appeals also "does not keep statistics, a list, or a database from which we could determine why the Board has placed an individual on the [Involuntary] Exclusion List." *Id.* at 35a. Ms. Lloyd believed that the only way to obtain such information would be to review every single file for each of the individuals on the Involuntary

5

Exclusion List and then manually create the desired records. *Id.*[7] Echoing Ms. Lanza, Ms. Lloyd stated that the Board publishes the Involuntary Exclusion List on its website, which "can be searched by name or photo index and contains a brief description of why [each] individual was placed on the . . . List." *Id.* at 35a-36a.

On April 15, 2019, the OOR affirmed the Board's denial of Collazo's RTKL request. The OOR found that the records sought by Collazo through parts 1 and 2 of the request fell within the RTKL's noncriminal investigation exemption. The OOR also found Ms. Lanza's and Ms. Lloyd's affidavits credible and determined that the records sought by Collazo in parts 3 through 5 do not exist. *Id.* at 159a-61a. For these reasons, the OOR denied Collazo's appeal and instructed the Board that it need not take any additional action. *Id.* at 161a. This appeal followed.

### Discussion

Collazo's claims on appeal are difficult to discern.[8] He asserts in his Petition for Review that

> [t]he OOR['s] [F]inal [D]etermination dated April 15, 2019 was rendered without benefit of relevant or probative evidence that an actual investigation was ever conducted by the [Bureau of Investigations and Enforcement] or the Pennsylvania State Police Bureau of Gaming Enforcement concerning [Collazo's] long[-]ignored 2015 original complaint.

Petition for Review, ¶4. Collazo then asks our Court "to establish that a diligent and thorough investigation was conducted by both [the Bureau of Investigations and Enforcement] and the Pennsylvania State Police Bureau of Gaming Enforcement as

---

[7] By law, "an agency is not required to create a record if the requested record does not exist. Nor is it required to compile the record in a new or novel format. [Section 705 of the RTKL,] 65 P.S. § 67.705." *Hodges v. Pa. Dep't of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011).

[8] We exercise *de novo*, plenary review when considering RTKL appeals stemming from OOR determinations. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

the original 2015 complaint involved both criminal and non-criminal allegations." *Id.*, ¶5. In his appellate brief, Collazo offers a short and confusing argument as to why we should grant his appeal. He alleges, without offering supporting evidence, that the Board may not have properly investigated the complaint he submitted to it in 2015 and uses "outsourced firms to conduct investigations" in order to dodge the RTKL's disclosure requirements. Collazo's Br. at 2-3. He then argues that our Court, as well as the Pennsylvania Attorney General, has the power "to make demand [sic] upon the [Board] and make available to the [C]ourt all investigation documents relating to [Collazo's 2015] complaint." *Id.* at 3. Collazo closes by declaring, in essence, that the Board has shirked its duty to thoroughly investigate his complaints and that a ruling from our Court in his favor regarding his RTKL request is necessary, so that "the [allegedly] secret and unconstitutional relationship" between the Board and the Casino can be exposed to the general public. *Id.* at 3-4.

This is problematic for two reasons. First, Collazo seeks to transform his initial RTKL request from one pertaining to the specific, aforementioned records to a far broader, judicially directed inquiry into the Board's exercise of its investigatory duties and its relationship with the Casino. This is impermissible. *See McKelvey v. Office of Attorney Gen.*, 172 A.3d 122, 125 (Pa. Cmwlth. 2017) ("Once a RTKL request is submitted, the requester may not expand or modify the request on appeal."). Second, in attempting this transformation, Collazo has simultaneously neglected to pursue his original argument that he should be given the precise records enumerated in his initial, five-part request. Therefore, he has failed to properly preserve or raise any issues for our consideration. Pa. R.A.P. 1513, 1551, 2116, 2117; *see Glunk v. Dep't of State*, 102 A.3d 605, 611 (Pa. Cmwlth. 2014).

Furthermore, even on the merits of his initial RTKL request, Collazo would not be entitled to a decision in his favor. "[T]he objective of the RTKL 'is to empower citizens by affording them access to information concerning the activities of their government.'" *Levy v. Senate of Pa.*, 65 A.3d 361, 381 (Pa. 2013) (quoting *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012)).

> Under the RTKL, records in the possession of an agency are presumed to be public unless they are: (1) exempted by Section 708 of the RTKL; (2) protected by privilege; or (3) exempted "under any other Federal or state law or regulation or judicial order or decree." Section 305 of the RTKL, 65 P.S. § 67.305. The Commonwealth agency bears the burden of proving a record is exempt from disclosure.

*Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 371-72 (Pa. Cmwlth. 2013); *see* 65 P.S. § 67.708(a) (an agency must prove by a preponderance of the evidence that a disclosure exemption applies).

With regard to parts 1 and 2 of Collazo's request, the Board again asserts that the sought-after records are exempted from disclosure by the RTKL's noncriminal investigation exemption. Board's Br. at 13-15. We agree. This exemption applies to records generated through "a systematic or searching inquiry, a detailed examination, or an official probe" regarding alleged (or actual) noncriminal, legal or regulatory violations. *Dep't of Health v. Office of Open Records*, 4 A.3d 803, 811 (Pa. Cmwlth. 2010). Here, it is undisputed that Collazo submitted complaints to the Board. Tepper subsequently informed Collazo that Board apparatuses had both investigated his allegations against the Casino and concluded that no legal or regulatory violations had occurred. S.R.R. at 46a. Collazo then requested records from the Board, such as interview transcripts and videos, the creation of which had been prompted by his complaints. *Id.* at 1a. Given that, by law, the Board's Office of Enforcement Counsel and Bureau of Investigations and Enforcement may only

8

conduct noncriminal investigations, 4 Pa. C.S. § 1517(a.1)-(a.2), the records sought by Collazo through parts 1 and 2 of his request fall squarely within the RTKL's noncriminal investigation exemption.[9]

Turning to parts 3 through 5 of Collazo's records request, the Board still asserts that no responsive documents exist. Board's Br. at 15-16.

> The burden of proving a record does not exist . . . is placed on the agency responding to the right-to-know request. *See* 65 P.S. § 67.708. . . . [The] agency may satisfy its burden of proof that it does not possess a requested record with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record.

*Hodges*, 29 A.3d at 1192.

> The affidavits must be detailed, nonconclusory, and submitted in good faith.[] Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned. . . . In other words, a generic determination or conclusory statements are not sufficient to justify the exemption of public records.

*Office of Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (internal citation omitted). Both Ms. Lanza's and Ms. Lloyd's unsworn affidavits provide

---

[9] As noted above, Collazo claimed in his Petition for Review that his complaints to the Board about the Casino contained allegations of both criminal and noncriminal violations. Petition for Review, ¶5. This is immaterial, though. While the Bureau of Investigations and Enforcement may refer potentially criminal matters to the Pennsylvania State Police (PSP) and cooperate with criminal investigations, only the PSP, county-level district attorneys, and the Pennsylvania Attorney General have the statutory authority to conduct investigations regarding alleged or actual criminal violations of our Commonwealth's gaming laws or regulations. 4 Pa. C.S. § 1517(a.1.)(7)-(8), (c)(3)-(4), (6), (9), (c.1), (d). Indeed, Tepper indicated as much in his December 3, 2018 letter, when he informed Collazo that the Office of Enforcement Counsel and Bureau of Investigations and Enforcement "solely have jurisdiction over non-criminal violations of the [Gaming] Act and the Board's regulations[,]" and directed Collazo to reach out to the PSP's Bureau of Gaming Enforcement in the event he believed either the Casino or its employees had committed crimes. S.R.R. at 46a.

detailed, particularized explanations for why the Board does not have the records Collazo seeks. Furthermore, there is no evidence that the Board proffered these affidavits in bad faith. Therefore, we find both affidavits credible and that they satisfied the Board's burden of proving that such records do not exist.

## Conclusion

Given that Collazo has neither properly raised nor preserved any issues for our consideration, and would not have been entitled to relief on the merits of his original RTKL request, we affirm the OOR's April 15, 2019 Final Determination.


_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ruben M. Collazo,       :
           Petitioner    :
                   :   No. 581 C.D. 2019
    v.                  :
                   :
Pennsylvania Gaming Control Board, :
           Respondent    :

# **O R D E R**

AND NOW, this 16th day of December, 2019, the Pennsylvania Office of Open Records' April 15, 2019 Final Determination is AFFIRMED.

_____
ELLEN CEISLER, Judge